**VACU–MAID, INC., a corporation,**
**Appellant,**

v.

**Joe COVINGTON, Appellee.**

**No. 46439.**

Court of Appeals of Oklahoma,
Division 2.

April 30, 1974.

Rehearing Denied June 19, 1974.

Certiorari Denied Oct. 31, 1974.

Released for Publication by Order of the
Court of Appeals Jan. 17, 1975.

Burdick, Shears & Clark, Ponca City, for appellant.

Northcutt, Northcutt, Ellifrit, Raley & Gardner, Ponca City, for appellee.

BACON, Judge.

Did the trial court err in finding it did not have in personam jurisdiction over the nonresident defendant?

This appeal involves a suit on an open account which was initiated in the trial court by appellant, an Oklahoma corporation, against appellee, who was a resident of the state of North Carolina when the alleged transactions took place. The case was being tried to a jury when at the close of appellant's evidence the trial judge sustained appellee's "motion as to jurisdiction" and dismissed the case. Appellant is now appealing that ruling.

The evidence shows appellant manufactures and sells built-in cleaning systems at its Ponca City, Oklahoma, plant for home and industrial use. Appellant sells the systems to distributors upon individual orders and the distributors then sell to and install the systems for the ultimate purchasers. Appellant's agent went to North Carolina on several occasions in an attempt to get appellee's corporation to sell appellant's systems. Eventually appellee agreed to do so and made a trip to Oklahoma to view appellant's plant and familiarize himself with the systems. Appellee would telephone collect orders to appellant's Ponca City plant and appellant would ship the systems, f. o. b. Ponca City, Oklahoma.

This procedure was followed for several years until March 20, 1972, when appellant filed suit to recover $5,091.18 due on an open account from July 8, 1968, to March of 1970. Appellee was served in South Carolina and after unsuccessfully attacking the jurisdiction of the trial court, appellee filed an answer denying appellant sold and delivered the systems to appellee at Ponca City, Oklahoma; denied appellee transacted any business in Oklahoma; and stated appellant did sell the systems to a corporation known as Co-Mac Distributors in North Carolina. Appellant replied by general denial. After hearing appellant's evidence, the trial court dismissed the suit stating, "The Court feels that there has not been the necessary jurisdictional contact with the defendant, Joe Covington."

Appellant contends the trial court had in personam jurisdiction over appellee under 12 O.S.1971, § 187(a)(1) & (2),[1] and under 12 O.S.1971, § 7101.03(a)(1)[2] of the Uniform Interstate and International Procedure Act. Both quoted sections make an

---

1. 12 O.S.1971, § 187:

"(a) Any person, firm, or corporation other than a foreign insurer licensed to do business in the State of Oklahoma whether or not such party is a citizen or resident of this State and who does, or who has done, any of the acts hereinafter enumerated, whether in person or through another, submits himself, or shall have submitted himself, and if an individual his personal representative, to the jurisdiction of the courts of this State as to any cause of action arising, or which shall have arisen, from the doings of any of said acts:

(1) the transaction of any business within this State;

(2) the commission of any act within this State . . . ."

2. 12 O.S.1971, § 1701.03:

"(a) A court may exercise personal jurisdiction over a person, who acts directly or

individual amenable to in personam jurisdiction if he involves himself in the transaction of any business in this state. The only limitation placed upon a court in exercising in personam jurisdiction over nonresidents transacting any business in this state is that of due process. This limitation is known as the "minimum contacts" rule and was pronounced by the United State Supreme Court in the case of International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). There the Court said:

"Historically the jurisdiction of courts to render judgment in personam is grounded on their de facto power over the defendant's person. Hence his presence within the territorial jurisdiction of a court was prerequisite to its rendition of a judgment personally binding him. Pennoyer v. Neff, 95 U.S. 714, 733, 24 L.Ed. 565. But now that the capias ad respondendum has given way to personal service of summons or other form of notice, due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'

.     .     .     .     .     .

"Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment in personam against an individual or corporate defendant with which the state has no contacts, ties, or relations.  .   .   .

"But to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state.

The exercise of that privilege may give rise to obligations; and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue.  .   .   ."

The Supreme Court seemed to extend the minimum contacts rule in the later case of McGee v. International Life Ins. Co., 355 U.S. 220, 788 S.Ct. 199, 2 L.Ed.2d 223 (1957). In *McGee,* the Court reversed a Texas decision which refused to enforce a judgment recovered by a life insurance policy beneficiary in California because service was made outside California. In reversing, the Court found for purposes of due process the suit was based on a contract which had "substantial connection" with the state of California: the premiums were mailed from California and the insured was a resident there when he died. The Court said:

"It cannot be denied that California has a manifest interest in providing effective means of redress for its residents when their insurers refuse to pay claims. These residents would be at a severe disadvantage if they were forced to follow the insurance company to a distant State in order to hold it legally accountable."

Thus from *McGee* and *International Shoe,* we find the rule to be that a nonresident of the forum is subject to in personam jurisdiction in the forum with which he had minimum contacts, providing maintenance of the suit does not offend traditional notions of fair play and substantial justice. Just what amounts to minimum contacts must be decided by the facts of each individual case. *McGee,* we think, points out what the court intends in its reference to "traditional notions of fair play and substantial justice" when it considered the "manifest interest" of the state of California in giving redress to its residents by allowing suit in California in lieu of going

by an agent, as to a cause of action or claim for relief arising from the person's:

(1) transacting any business in this State  .   .   .  ."

to a distant forum for redress. In such circumstances in personam jurisdiction would not violate traditional notions of fair play and substantial justice to a company which solicits and sells policies to California residents.

The Oklahoma Supreme Court has passed on Oklahoma's long arm statutes several times since *International Shoe* and *McGee*. The most frequently cited cases are Simms v. Hobbs, Okl., 411 P.2d 503 (1966); Marathon Battery Co. v. Kilpatrick, Okl., 418 P.2d 900 (1965); Crescent Corp. v. Martin, Okl., 443 P.2d 111 (1968) and Vemco Plating, Inc. v. Denver Fire Clay Co., 496 P.2d 117 (1972). In *Simms,* an Oklahoma resident executed a contract in New Mexico to purchase realty and deposited earnest money by check. After the Oklahoma resident stopped payment on the check, the seller obtained an in personam judgment in New Mexico and then brought suit in Oklahoma on the judgment. The Oklahoma court found the parties had stipulated the defendant transacted business in New Mexico (hence "minimum contact" was present) and upheld the New Mexico judgment finding due process requirements were not violated. The court said in syllabus 4:

"The foundations of jurisdiction include the interest that a state has in providing redress in its own courts against persons who inflict injuries upon, or otherwise incur obligations to, those within the ambit of state's legitimate protective policy, and limits on exercise of jurisdiction are not 'mechanical or quantitative' but are to be found only in requirements that provisions made for such purpose must be fair and reasonable in circumstances and give to defendant adequate notice of claim against him and adequate and realistic opportunity to appear and be heard in his defense."

The next case was *Marathon Battery* where the court speaking through Justice Berry, found the minimum contact requirement for due process satisfied when Marathon, a Wisconsin corporation, manufac-

tured and shipped the commodity to its Oklahoma retailer for sale and distribution in Oklahoma. In finding Marathon amenable to in personam process, the court said:

"The business activities by which defendant Marathon's products came into the State for retail sales by Otasco are outlined above. The defendant could and undoubtedly would, have sought relief in Oklahoma courts, had necessity arisen to protect its rights in respect to commercial transactions with Otasco reasonably can be presumed. We are not required to consider what the result would be if a single, isolated transaction were involved. The evidence reflects a continuing series of transactions, although it may be understood the volume of business within this State is not the only method which may be considered as establishing the necessary contacts to support the propriety of statutory service of process upon this foreign defendant. The consequences imputed to defendant were within its own control. There was no need for it to act in this State at all unless it desired to do so."

After *Marathon Battery,* came the Crescent Corporation case where an Oklahoma resident entered into an employment contract with a foreign corporation neither licensed by nor doing business in Oklahoma. The Oklahoma resident was to do consulting work for the corporation by attending not more than two Board of Directors' meetings annually. The court held that, without more, such does not constitute "the transaction of any business" within the state of Oklahoma, and thus held the foreign corporation was not subject to a judgment in personam. The court, speaking through Justice Lavender, stated:

"The qualitative rule (rather than the mechanical rule), which the court in International Shoe said will control, should include a consideration of *all* the circumstances affecting the central question of whether the constitutional guarantees of due process are not violated."

The most recent case in Oklahoma is Vemco Plating, Inc. v. Denver Fire Clay Co., supra. In *Vemco,* the defendant was a Delaware corporation with its principal place of business in Denver, Colorado. Defendant designed, manufactured and sold a furnace to an Oklahoma installer for installation in plaintiff's Oklahoma City plant. Plaintiff filed suit in Oklahoma alleging the furnace failed to function properly. The court found the evidence showed defendant's contract was to supply the materials especially for the Oklahoma plant and defendant had sufficient minimum contacts with Oklahoma to be validly personally served under Oklahoma's Uniform Interstate and International Procedure Act.

▮ Thus Oklahoma has made it clear that the Oklahoma long arm statutes were intended to extend the jurisdiction of Oklahoma courts over nonresidents to the outer limits permitted by the due process requirements of the Fourteenth Amendment of the United States Constitution. There is no question but that in personam jurisdiction will be upheld in Oklahoma where the nonresident defendant is a *seller* who has shipped goods into Oklahoma, even if such shipment was an isolated or infrequent occurrence. See Vemco Plating, Inc. v. Denver Fire Clay Co., supra. However, Oklahoma has apparently not interpreted the statute under facts similar to the case at bar, that is, where the defendant is a nonresident *buyer*.

Other jurisdictions, however, have dealt with the problem with varying results, depending on the facts. In general, the courts have expressed a reluctance to assert jurisdiction over a nonresident buyer. See "Automatic" Sprinkler Corp. v. Seneca Foods Corp., Mass., 280 N.E.2d 423 (1972); Geneva Indus., Inc. v. Copeland Constr. Corp., 312 F.Supp. 186 (N.D.Ill. 1970); Oswalt Indus., Inc. v. Gilmore, 297 F.Supp. 307 (D.Kan.1969); Chassis-Trak, Inc. v. Federated Purchaser, Inc., 179 F. Supp. 780 (D.N.J.1960). See also Whittaker Corp. v. United Aircraft Corp., 482

F.2d 1079 (1st Cir. 1973). The reason most often given for this buyer-seller distinction is that the seller is the aggressor or initiator in the forum and by selling his product in the state he receives the benefit and protection of the forum state's laws, and hopefully profits from its business therein. Further, allowing jurisdiction over "passive" buyers would tend to extinguish state lines and also to discourage out-of-state purchasers from dealing with resident sellers. See McQuay, Inc. v. Samuel Schlosberg, Inc., 321 F.Supp. 902 (D.Minn.1971).

There are, however, cases in which the nature of the transactions and the defendant's activities cause the court to find that jurisdiction over the foreign defendant would not offend "traditional notions of fair play and substantial justice." See Whittaker Corp. v. United Aircraft Corp., supra; In-Flight Devices Corp. v. Van Dusen Air, Inc., 466 F.2d 220 (6th Cir. 1972); Simpson Timber Co. v. Great Salt Lake Minerals & Chem. Corp., 296 F.Supp. 243 (D.Or.1969); Electronic Mfg. Corp. v. Trion, Inc., 205 F.Supp. 842 (S.D.Ind. 1962).

In *Simpson* jurisdiction was upheld over a nonresident buyer with the barest minimum of contacts. Jurisdiction was primarily based upon the fact that the defendant purposefully caused the plaintiff to manufacture $70,000 worth of parts in its Oregon plant, causing substantial impact on commerce in Oregon. The decision has been severely criticized because of its apparent subjection of all foreign purchasers to long arm jurisdiction. See e. g. McQuay, Inc. v. Samuel Schlosberg, Inc., supra.

Jurisdiction was held to be properly asserted also in a recent Sixth Circuit case applying the Ohio long arm statute, In-Flight Devices Corp. v. Van Dusen Air, Inc., supra. The court used the "purposeful act" test set out in Southern Machine Co. v. Mahasco Indus., Inc., 401 F.2d 374 (6th Cir. 1968), which is also the criteria relied on by the court in the Simpson case. Here too, the defendant's acts were held to

have an impact on the commerce of the forum state. But contrary to *Simpson,* which the court cites, the defendant Van Dusen sent its agent into the state to discuss the contract and to inspect production facilities, in addition to participating in substantial negotiations over contract terms. The court thus notes Van Dusen's active involvement and distinguishes it from the passive purchaser. The relevancy of this involvement is that it provides a clue to the significance attached by a defendant to his activities within the forum, and thus a clue to his expectations—an element in determining fairness.

This distinction between active and passive purchasers is most often the determining factor in those cases where a court's jurisiction over a nonresident buyer is challenged. The distinction is further clarified in Whittaker Corp. v. United Aircraft Corp., supra, where the court found two of three defendants were not subject to long arm jurisdiction since they fell clearly into the category of passive purchasers, while the participation of a third defendant, United, rose above that of a purchaser "who simply places an order and sits by until the goods are delivered." United, in contrast to the other two defendants, had solicited the plaintiff's participation, United personnel had frequently visited the plaintiff's plant, and it had supplied design specifications and work statements to govern the plaintiff's performance.

And the New Jersey long arm statute was held applicable and its application within the bounds of due process requirements in W. A. Kraft Corp. v. Terrace On The Park, Inc., 337 F.Supp. 206 (D.N.J. 1972), the court emphasizing that the nonresident defendant buyer "initiated the relationship" by soliciting a bid from the plaintiff.

■ In our opinion, with the possible exception of *Simpson,* the case at bar is distinguishable from those cases discussed above in which personal jurisdiction was extended over a foreign defendant purchaser. The distinction lies primarily in the lack of active participation by Covington and the fact that he did not initiate the relationship. These facts are in closer accord with those in McQuay, Inc. v. Samuel Schlosberg, Inc., supra, in which plaintiff's agent in New York solicited the defendant to purchase plaintiff's goods. The negotiations and contract were made in New York. The merchanise was manufactured in Minnesota and the price was to be remitted in Minnesota. The plaintiff argued that the activity generated by the order to be filled in Minnesota was sufficient minimal contacts to give jurisdiction. The federal court rejected this argument, stating:

> "This concept almost completely obliterates state lines and would lead to the result that anyone who deals with a Minnesota resident in any way or buys a product manufactured by any Minnesota company, can be brought into the Minnesota courts to respond to a suit."

Quoting from Fourth Northwestern Nat'l Bank v. Hilson Indus., Inc., 264 Minn. 110, 117 N.W.2d 732 (1962), the court notes:

> "We have . . . a corporate resident plaintiff who has taken the initiative . . . . *The nonresident corporation enjoys no particular privilege or protection in purchasing products from the resident seller,* none akin to the rights exercised by a party seeking to distribute its products within the forum state." (emphasis ours)

And, in the opinion of that court, if a single such transaction lacks jurisdictional prerequisites, such a deficiency cannot be cured merely be repeated similar transactions. The court concluded that subjecting the nonresident buyer to Minnesota jurisdiction would violate "traditional [standards] of fair play and substantial justice."

Under similar facts, application of the Massachusetts long arm statute has also been held to be outside the parameter of 14th Amendment due process. "Automatic" Sprinkler Corp. v. Seneca Foods Corp., supra.

And another "passive purchaser" was held to be immune from the Kansas long

arm jurisdiction in Oswalt Indus., Inc. v. Gilmore, supra. There, although the plaintiff's salesman contacted the defendant in the defendant's resident state, the defendant did make one visit to Kansas, which was initiated by plaintiff. The court ruled the defendant did not have a substantial connection with Kansas.

Visits were also made by the two defendants in *Whittaker* who were found to fall "clearly into the category of passive purchasers." Their contacts, the court said, were limited and not suggestive of the type of supervision or participation in which United engaged (which we discussed earlier). The primary Massachusetts contact, according to the First Circuit Court, was the plaintiff's performance of the contracts in Massachusetts. "The remainder of their activities may properly be characterized as 'ancillary' to the placement of . . . orders." See also Geneva Indus., Inc. v. Copeland Constr. Corp., supra.

In summary, research has revealed that, with few exceptions, in those cases where jurisdiction is extended over a nonresident defendant purchaser, that purchaser has either initiated the relationship or actively participated in negotiations and plans for production (e. g., design specifications). And if a nonresident buyer merely places an order by phone or mail, or to a salesman in the defendant's state, the majority of courts find insufficient contacts for in personam jurisdiction in the forum state.

In the case at bar, appellant's vice-president and general manager testified, ". . . I visited with Mr. Covington from time to time even before he became a distributor of ours for one purpose, and that is to get him to sell our product. He was selling a competitive product at that time." Clearly, appellant sought appellee out in North Carolina and solicited his business. Further, the oral contract of distributorship was undisputedly made in North Carolina. Appellant's agent continued to visit appellee in North Carolina "at least once a year." On the other hand, appellee's single visit to Oklahoma was to get better acquainted with the products he was to sell for appellant. Additionally, all the orders taken from appellee were by telephone and they were shipped freight collect directly to Winston-Salem, North Carolina.

With these facts in mind, we think appellee Covington falls more nearly within the passive purchaser category, and the additional factor of the goods being shipped f. o. b. Ponca City is not sufficient to increase defendant's contacts above the "minimal" level. We also agree with the court in *McQuay,* that a transaction lacking sufficient contacts cannot be cured merely because it is repeated, as is illustrated by the clearer situation of a simple mail order transaction.

Appellee's chief contact in this state was that appellant manufactured the goods here. The United States Supreme Court in Hanson v. Denckla, 357 U.S. 235, 78 S. Ct. 1228, 2 L.Ed.2d 1283 (1958), stated:

"The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with a forum State . . . . [*I*]*t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.*" (emphasis ours)

We hold that appellee's activities in Oklahoma are not sufficient to satisfy the minimum requirements of Constitutional due process, and the trial court therefore properly refused to exercise in personam jurisdiction over defendant.

Appellant's remaining proposition reads:

"In an action on an account the question of who owes the account is one of fact and is a question for the jury."

While appellant's statement of law may be correct where a factual conflict exists, we find it to be immaterial in view of our first conclusion. Joe Covington, the party defendant served, was not amenable to in

**144**

personam jurisdiction of the Oklahoma court in this case, and, thus the issue of who owes the account cannot be determined here.

Affirmed.

BRIGHTMIRE, P. J., and NEPTUNE, J., concur.