**Lois L. GREGORY, Appellant,**

**v.**

**W. R. GROVE et al., Appellees.**

**No. 47989.**

Court of Appeals of Oklahoma,
Division No. 1.

Sept. 2, 1975.

Released for Publication by Order of Court
of Appeals March 4, 1976.

William S. Dorman, Tulsa, for appellant.

Ungerman, Grabel & Ungerman, Tulsa, for appellees, Taggs and Amalgamated Development Co., Inc.

BOX, Judge:

An appeal by Lois L. Gregory, plaintiff in the trial court (appellant), from an order of the District Court of Tulsa County dismissing case as to defendants (appellees) Rick Taggs and Amalgamated Development Company, Inc. (added defendant) d/b/a Washington Patent Office Search Bureau for lack of In Personam Jurisdiction.

The appellant, Lois Gregory, commenced this action on June 18, 1974, against W. R. Grove (not a party to this appeal), and the appellee herein, Rick Taggs, who were alleged to be residents and citizens of the District of Columbia and also alleged to be doing business as Washington Patent Office Search Bureau. Purported service of summons on Taggs was undertaken by service on him in Washington, D. C., on August 5, 1974. Taggs, by special appearance, filed his Motions to Quash and to Dismiss for Lack of Personal Jurisdiction over him, which was supplemented and supported by his affidavit to the effect that he was a resident of Washington, D. C.; that he had never individually or in association with Grove done business in the name of Washington Patent Office Search Bureau; that said Washington Patent Office Search Bureau was the trade name under which Amalgamated Development Company, Inc. does business in the City of Washington, D. C.; that he did not own any interest in said business either as owner or partner or as a stockholder in said corporation; and that he simply was an employee of said corporation, employed to work in said office. He further stated that Grove was a former employee of said corporation in said office; that the Washington office was the only place of business of Washington Patent Office Search Bureau, and that neither he nor any agent or employee of his had ever done or engaged in any of the ten listed therein acts or activities (being the acts and activities specified in 12 O.S.1971, §§ 187 and 1701.- 03, as events under which long-arm service may be had.)

Further, in support of Taggs' Motions was the affidavit of Ann M. Blasius, which stated that she was the sole stockholder of Amalgamated Development Company, Inc. (hereinafter called Amalgamated); that said corporation was incorporated under the laws of the District of Columbia and was not qualified to do business within the State of Oklahoma; that said corporation was the owner and operator of the business known as Washington Patent Office Search Bureau with Washington, D. C., as its only place of business; that Taggs was an employee of that business and owned no interest therein or in said corporation and that neither the corporation, Taggs nor Grove had engaged in any of the acts or activities set forth in 12 O. S.1971, §§ 187 and 1701.03, as the basis on which out-of-state service may be had as the basis for in personam jurisdiction over non-residents and foreign corporations.

Following Taggs' Motions, appellant on August 9, 1974, filed her First Amended Petition, which named the appellee, Amalgamated, as an additional party defendant, and alleged that it and the other defendants were doing business as the Washington Patent Office Search Bureau. Otherwise, the allegations of the Amended Petition were substantially the same as those in the original Petition. Thereupon, appellant undertook to obtain service on Amalgamated in Washington, D. C., under the Oklahoma long-arm statutes. On September 18, 1974, Amalgamated by special appearance filed its Motions to Quash and to Dismiss similar to the Motions previously filed by Taggs. Amalgamated's Motions were supported by the affidavit of Ann Blasius as

the sole stockholder of Amalgamated, which affidavit stated that Amalgamated was incorporated under the laws of the District of Columbia and had not been qualified in the State of Oklahoma; that said corporation was the sole owner and operator of the business known as Washington Patent Office Search Bureau, with its only office and place of business in the City of Washington, D. C.; that neither the defendant, Grove, nor Taggs had any interest in said business except as employees of Amalgamated and that Amalgamated had not been engaged in any of the therein listed acts or activities which by the Oklahoma long-arm statutes may be made the basis of obtaining personal jurisdiction over it.

On October 3, 1974, the trial court sustained the Motions of defendants Rick Taggs and Amalgamated Development Company, Inc. to quash service and dismiss action as to said defendants for lack of personal jurisdiction over them.

Thereafter appellant filed her Motion for Reconsideration and/or Motion for a New Trial which contained affidavits of William S. Dorman, attorney for appellant; affidavit of Lois L. Gregory; copy of telephone advertisement in the Tulsa County Telephone Book of Washington Patent Office Search Bureau; together with numerous letters of correspondence between the parties which will be hereinafter set out; and with a legal brief. Appellees thereafter filed their brief in opposition to appellant's Motion.

In this respect, appellees in their brief by foot note make the following comment:

"The letters appearing at R. 69–81 were not before the trial court when it heard and ruled on appellees' Motions to Quash and Dismiss but were subsequently submitted as part of and in support of appellant's Motion to Reconsider and/or Motion for New Trial. Said letters do not qualify as newly discovered evidence permitted under a motion for new trial."

Appellees did not file a counter-appeal; therefore we are not called upon to make any ruling pertaining thereto.

On November 1, 1974, the trial court by written order affirmed its previous motion of October 3, 1974 and overruled appellant's Motion for a New Trial. From said order appellant brings this appeal.

A resume of the incidents leading up to the case now under review appears as follows:

Prior to December of 1971, appellant Lois L. Gregory invented a new type of shoe. On or about the first of December, 1971, appellant saw an advertisement of defendant, Washington Patent Office Search Bureau (appellee) in the yellow pages of the telephone directory of Southwestern Bell Telephone Company for Tulsa for the year 1971. The advertisement was listed under a heading "Patent Searchers" and stated: "Washington Patent Office Search Bureau—Free Forms to Protect Inventions—711 14 NW Washington, DC—202 347–6304."

In response to the aforementioned advertisement appellant wrote a letter early in December of 1971, requesting information on how to obtain a patent on her invention. Appellees responded with a letter dated December 15, 1971, signed by a W. R. Groves as Managing Director of the Washington Patent Office Search Bureau. Enclosed therein was a protection form which the letter suggested appellant should fill out; the letter also included an offer to conduct a search on appellant's behalf in the Patent Office records to determine whether the invention was new and patentable and requested appellant to send a sum in the amount of $6.00 if she wished to engage the services of the Washington Patent Office Search Bureau in conducting the search.

Following receipt of the letter of December 15, 1971, appellant again wrote to the Washington Patent Office Search Bureau, enclosing the filled out protection form, a sketch of her new shoe, and a re-

mittance in the amount of $6.00 to cover the search.

Thereafter appellant received a letter dated January 28, 1972, from the appellees acknowledging receipt of the remittance to cover the search, indicating that an investigation would be made in the near future and a report would be forwarded thereafter. Following receipt of the letter of January 28, 1972, appellant received another letter dated February 17, 1972, from appellees expressing their legal opinion that her invention was patentable and offering to prepare a patent application for her, further advising appellant that she should send $175.00 as initial remittance if she wished to accept their offer to prepare the patent application.

Following receipt of the letter on February 17, 1972, appellant returned to the appellees the references enclosed with that letter and also forwarded her remittance in the amount of $175.00. Thereafter appellant received a letter dated March 2, 1972, acknowledging receipt of her retainer in the amount of $175.00 and also acknowledging receipt of a model sent to the appellees.

Following receipt of the letter of March 2, 1972, appellant received another letter dated March 31, 1972 from appellees. Enclosed was a photoprint of a drawing prepared by appellees and requesting that the photoprint be studied carefully and returned to appellees together with a balance due in the amount of $175.00.

Following receipt of the letter of March 31, 1972, appellant returned the photoprint to appellees, requesting that certain changes be made on the drawing. Thereafter, appellant received a letter dated May 8, 1972, enclosing a corrected photoprint and again requesting that the balance due in the amount of $175.00 be returned with the photoprint.

Following receipt of the letter of May 8, 1972, appellant returned the corrected photoprint to appellees with a request that additional changes be made in the drawing, and also enclosed her remittance in the amount of $175.00 to cover the balance due. Thereafter, appellant received a letter dated May 23, 1972 from appellees acknowledging receipt of the photoprint with her comments thereon and further acknowledging receipt of the $175.00 covering the balance due. Thereafter appellant received a letter dated June 28, 1972, from the Washington Patent Office Search Bureau enclosing what purported to be a complete United States patent application, together with petition, specification, claims, oath and drawing, and with instructions for filing.

Following receipt of the letter of June 28, 1972, appellant called the Washington Patent Office Search Bureau on the telephone and talked to someone, believed to be Rick Taggs. In the telephone conversation she requested additional changes in the drawings but was advised that no drawing changes were necessary. Thereafter, appellant sent a letter to the Washington Patent Office Search Bureau suggesting that the application could be modified to include different kinds of materials and buckles and further inquired as to what would happen after filing of the patent application in the Patent Office. Appellant then received another letter dated July 24, 1972 from the Washington Patent Office Search Bureau advising her that it would be one to eighteen months before she would hear from the Patent Office and also advising her that it was unnecessary to set forth different types of materials, buckles, etc.

Following receipt of the letter of July 24, 1972, appellant forwarded the patent application together with her check in the amount of $65.00 to the United States Patent Office, said application having been accorded Serial No. 300,680 and a filing date of October 25, 1972. Following the filing of the patent application, appellant wrote to the Washington Patent Office Search Bureau requesting a copy of the application and also requesting that the models, which were sent by appellant to

the Washington Patent Office Search Bureau, be returned to appellant. Thereafter, appellant received a letter dated November 27, 1972 from Washington Patent Office Search Bureau, enclosing a copy of the application and indicating that the models would be returned at their earliest convenience.

The letters of May 8, 1972, May 23, 1972, June 28, 1972, July 24, 1972, and November 27, 1972, were signed by Rick Taggs as "Managing Director" for the Washington Patent Office Search Bureau, whereas all prior letters from the Washington Patent Office Search Bureau had been signed by W. R. Groves as "Managing Director" of the Washington Patent Office Search Bureau.

Following the filing of the patent application, supra, the United States Patent Office, on April 5, 1973, rejected appellant's application for Letters Patent on the grounds that the appellant's invention was unpatentable over prior-issued patents on the grounds that the application failed to meet the formal standards of the United States Patent Office, and on the further grounds that the drawing diagrams failed to meet the technical requirements of the United States Patent Office.

Due demand was made by appellant upon the Washington Patent Office Search Bureau on December 5, 1973, for the return of the $521.00 referred to above, which demand the appellees rejected on February 19, 1974. Thereafter, appellant filed the lawsuit now under review.

Excellent briefs have been provided by all parties.

The basic issue in this case is whether or not the appellees made the "minimum contacts" with the State of Oklahoma to justify the vesting of jurisdiction under the "long arm" statutes of the State of Oklahoma, 12 O.S.1971, §§ 187 and 1701.03.

Most of the decisions of the Supreme Court which involve the question or interpretation of the Oklahoma "long arm" statutes refer to the decision which, apparently, was the genesis of the "long arm" statutes for this state and many other states, namely, the decision in *International Shoe Co. v. State of Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). There the court stated:

"Historically the jurisdiction of courts to render judgment in personam is grounded on their de facto power over the defendant's person. Hence his presence within the territorial jurisdiction of a court was prerequisite to its rendition of a judgment personally binding him. *Pennoyer v. Neff,* 95 U.S. 714, 733, 24 L.Ed. 565. But now that the capias ad respondendum has given way to personal service of summons or other forms of notice, due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he has certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'

"Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment in personam against an individual or corporate defendant with which the state has no contacts, ties, or relations."

The United States Supreme Court appeared to extend the "minimum contacts" rule in the later case of *McGee v. International Life Ins. Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). In *McGee* the Supreme Court reversed a Texas decision which refused to enforce a judgment recovered by a beneficiary under a life insurance policy in California because service was made outside of California. In reversing, the Court found that the suit was based on a contract which had "substantial connection" with the State of California; i. e., the premiums were mailed from Cali-

fornia and the insured was a resident of California when he died. The Supreme Court stated:

"It cannot be denied that California has a manifest interest in providing effective means of redress for its residents when their insurers refuse to pay claims. These residents would be at a severe disadvantage if they were forced to follow the insurance company to a distant State in order to hold it legally accountable."

The Oklahoma "long arm" statutes in question are 12 O.S.1971, §§ 187 and 1701.-03.

The relevant portions of 12 O.S.1971, § 187, are as follows:

"(a) Any person, firm, or corporation . . . who does . . . any of the acts hereinafter enumerated, whether in person or through another, submits himself, . . . and if an individual his personal representative, to the jurisdiction of the courts of this State as to any cause of action arising . . . from the doings of any of said acts:

"(1) the transaction of any business within this State;

"(2) the commission of any act within this State;

" * * *."

The relevant portions of 12 O.S.1971, § 1701.03, are as follows:

"(a) A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action or claim for relief arising from the person's :

"(1) transacting any business in this state;

"(2) contracting to supply services or things in this state;

"(3) causing tortious injury in this state by an act or omission in this state;

"(4) causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business or engages in any other per-

sistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this state;

"(5) having an interest in, using, or possessing real property in this state; or

"(6) contracting to insure any person, property, or risk located within this state at the time of contracting; or

"(7) maintaining any other relation to this state or to persons or property including support for minor children who are residents of this state which affords a basis for the exercise of personal jurisdiction by this state consistently with the Constitution of the United States."

The Supreme Court has interpreted the "long arm statutes" several times since the *International Shoe* decision, supra. Suffice it to say the most recent cases appear to be the following: *Architectural Bldg. Components Corp. v. Comfort,* 528 P.2d 307; *Yankee Metal Products Co. v. The District Court of Oklahoma Co.,* 528 P.2d 311, and *Vacu-Maid, Inc. v. Covington,* 530 P.2d 137 (Court of Appeals 1974).

In *Vacu-Maid,* the Court of Appeals, Division No. 2, in commenting on the prior decisions of the Oklahoma Supreme Court, noted:

"Thus Oklahoma has made it clear that the Oklahoma long arm statutes were intended to extend the jurisdiction of Oklahoma courts over nonresidents to the outer limits permitted by the due process requirements of the Fourteenth Amendment of the United State Constitution. There is no question but that in personam jurisdiction will be upheld in Oklahoma where the nonresident defendant is a *seller* who has shipped goods into Oklahoma, even if such shipment was an isolated or infrequent occurrence. See *Vemco Plating, Inc. v. Denver Fire Clay Co.,* supra. However, Oklahoma has apparently not interpreted the statute under facts similar to the case at bar,

that is, where the defendant is a nonresident *buyer*."

In each of the cases of *Architectural Bldg. Components Corp.* and *Yankee Metal Products Co.*, the defendant in the court below was a nonresident buyer or purchaser. In the *Architectural Bldg. Components Corp.* case, the Supreme Court held that there was no jurisdiction over the defendant below because the test of "minimum contacts" was not met. However, in the *Yankee Metal Products Co.* case, the Supreme Court held that there was jurisdiction over the nonresident buyer or purchaser under the "active-purchaser, passive-purchaser" theory of classification.

Summarizing, as far as the State of Oklahoma is concerned, we must apply the "minimum contacts" test and we must also consider whether or not the maintenance of a suit based thereon does not offend "traditional notions of fair play and established justice." If the nonresident defendant is a seller, we apparently have no problem in finding that he has submitted himself to the jurisdiction of the courts of Oklahoma. If, on the other hand, the nonresident defendant is a buyer or purchaser, we consider whether or not he was a "active purchaser" or a "passive purchaser" in determining whether or not he has subjected himself to the Oklahoma courts.

The records show that the appellees were placing advertisements in the yellow pages of the telephone directory of Southwestern Bell Telephone Company for the City of Tulsa at least as early as 1970. Appellant has alleged that she saw the advertisement in the 1971 edition of the telephone directory of Southwestern Bell Telephone Company for the City of Tulsa. The advertisement in question appeared as follows:

"Patent Searchers

"Washington Patent Office Search Bureau—Free Forms to Protect Inventions—711 14 NW Washington, DC— 202 347–6304."

Appellees argue that the advertisements in the yellow pages of the Tulsa telephone directory do not constitute the solicitation of business in the State of Oklahoma because they do not list a local telephone number or a local office.

Even if it could be successfully argued that the advertisements in the yellow pages of the Tulsa telephone directory do not constitute solicitation of business, the correspondence between the appellant and the appellees which was generated by the advertisement referred to above, clearly shows further solicitations on behalf of the appellees; as set forth in the original Petition and in the First Amended Petition, on December 15, 1971, the appellees solicited the appellant to employ appellees to conduct a patentability search and appellant accepted this solicitation. Later on February 17, 1972, as set forth in the original Petition and in the amended petition, the appellees further solicited appellant to retain appellees to draft a patent application on her behalf; and, again, appellant accepted this solicitation.

The various letters sent by the appellees to appellant, some of which contain offers which were accepted by appellant, will constitute a number of additional contacts between appellees and the appellant in the State of Oklahoma.

In another recent decision of the Oklahoma Supreme Court, in the case of *Fidelity Bank, N.A. v. Standard Industries Inc.*, 515 P.2d 219 (1973), a suit for breach of contract, the defendants were foreign corporations and were not domesticated to do business in the State of Oklahoma. It appears that the only contact between the plaintiff and the defendants was by way of letter and/or telephone. The court considered all of the telephone calls and all of the letters, and held at page 223:

" . . . We agree with the plaintiff that the totality of contacts between plaintiff and defendants in Oklahoma was sufficient to justify the District Court in exercising jurisdiction over the

defendants under the authority of Sections 187 and 1701.03, (supra)."

In the case of *Hull v. Gamblin,* (Dist. Col.Ct.App.1958) 241 A.2d·739, the fact situation was quite similar to the fact situation now under review. The facts set forth in *Hull v. Gamblin* are quoted as follows:

"Appellant placed a listing in the Amarillo, Texas, classified telephone directory under the heading 'Patent Searchers,' advertising 'Free Invention Protection Forms' and giving her District of Columbia address and telephone number. In response to this advertisement, appellee, a Texas resident, wrote to appellant inquiring as to the patentability of a device he had invented. Appellant replied, stating that for a small fee, she would conduct a preliminary patent search in the District of Columbia. Appellee accepted that proposal. Shortly thereafter appellant advised appellee by mail that, in her opinion, his invention was patentable and offered to prepare a patent application in return for a second and larger fee. A lengthy correspondence followed, as a result of which, at appellee's request, appellant prepared the application, mailed it to Texas for appellee's approval and signature, and, upon its return to her, filed it with the United States Patent Office here. The application was rejected. Appellee then filed suit in Texas alleging that appellant has fraudulently misrepresented her qualifications to give advice on the patentability of new inventions and to prepare patent applications. The Texas court found for appellee and entered judgment in his favor."

As to the advertisement in the Amarillo directory, the court in *Hull v. Gamblin* noted:

"Of her own choice and upon her own initiative, appellant advertised her services in a publication designed for general circulation only in Texas. But for that advertisement, appellee might never have been in communication with appellant."

The appellees argue that the *Hull* case is inapplicable because the Texas statute specifically relied upon refers to "entering into a contract by mail or otherwise." On the other hand, as pointed out above, we believe that the Oklahoma Supreme Court has made it clear that the Oklahoma long arm statutes were intended to extend the jurisdiction of Oklahoma courts over nonresidents to the outer limits permitted by the due process requirements of the Fourteenth Amendment of the United States Constitution; *Vacu-Maid Inc. v. Covington,* supra. Furthermore, the courts of Oklahoma have had no difficulty in finding jurisdiction where the contacts have been solely by mail or telephone, *Fidelity Bank, N.A. v. Standard Industries Inc.,* supra; *Yankee Metal Products Co. v. District Court of Oklahoma Co.,* supra.

Appellees, in their motions to quash summons and dismiss for lack of personal jurisdiction, have not denied the placing of the advertisements in the yellow pages of the Tulsa telephone directory, nor have they denied sending the various letters thereafter to the appellant. The appellees have denied the ultimate conclusion of jurisdiction. The allegedly supporting affidavits of the appellees merely state that they have not committed any acts which would fall within the purview of 12 O.S.1971, §§ 187 and 1701.03. Thus we are called on to rule only on the one question, to-wit, the trial court's jurisdiction or lack of jurisdiction over appellees Rick Taggs and Amalgamated Development Company, Inc. d/b/a Washington Patent Office Search Bureau.

From a review of the records we hold that the actions of the appellees meets both the "minimum contact" test as well as the "traditional notions of fair play and justice"; thus said actions constituted the transaction of business within the State of Oklahoma.

We reverse the dismissing of the action against Rick Taggs and Amalgamated De-

velopment Company, Inc. d/b/a Washington Patent Office Search Bureau, and direct the trial court to reinstate plaintiff's cause of action and proceed accordingly.

REVERSED AND REMANDED WITH INSTRUCTIONS.

ROMANG, P. J., and REYNOLDS, J., concur.