560 P.2d 161
**UNITED NUCLEAR CORPORATION, a
Delaware Corporation,
Plaintiff-Appellee,**

v.

**GENERAL ATOMIC COMPANY, a partnership composed of Gulf Oil Corporation and Scallop Nuclear, Inc., Defendant-Appellant.**

**No. 10943.**

Supreme Court of New Mexico.

Oct. 15, 1976.

Harry L. Bigbee, Donnan Stephenson, Michael R. Comeau, W. Perry Pearce, Bigbee, Stephenson, Carpenter & Crout, Santa Fe, for plaintiff-appellee.

William Federici, Jeffrey R. Brannen, Thomas W. Olson, Montgomery, Federici, Andrews, Hannahs & Buell, Santa Fe, George T. Harris, Jr., Modrall, Sperling, Roehl, Harris & Sisk, John D. Robb, John P. Eastham, Richard C. Minzner, Rodey, Dickason, Sloan, Akin & Robb, P. A., Albuquerque, for defendant-appellant.

## OPINION

McMANUS, Justice.

On December 21, 1975, an action was brought in the District Court of Santa Fe County by United Nuclear Corporation (UNC), a Delaware corporation with its principal place of business in New York, against General Atomic Company (GAC), a California partnership with its principal place of business in San Diego, California. The two partners in GAC are Scallop Nuclear (Scallop), a Delaware corporation with its principal place of business in New York, and Gulf Oil Corporation (Gulf), a Pennsylvania corporation, with its principal place of business in Pennsylvania. UNC served GAC by serving the statutory agent of Gulf in New Mexico.

The suit in the lower court was to obtain a declaratory judgment setting aside or modifying certain contractual obligations to GAC which UNC has with respect to the supply and delivery of uranium. An amended complaint was filed on April 5, 1976, seeking to void an additional contract dated June 20, 1974, on grounds similar to those alleged in the original complaint.

GAC moved to dismiss the action on the grounds that the district court lacked personal jurisdiction over the defendant and that proper service of process had not been made. The district court denied the motion. Defendant sought and was granted an interlocutory appeal by the Court of Appeals. The appeal has been certified to the Supreme Court pursuant to § 16–7–14(C), N.M.S.A.1953.

Points relied upon by GAC in this appeal are as follows:

POINT I: No service of process was effected upon General Atomic.

POINT II: If service of process was not defective due process requires that General Atomic have contacts sufficient to satisfy the Long Arm Statute.

POINT [III]: GAC has not waived its objections to personal jurisdiction.

POINT [IV]: The defendant, General Atomic, a California partnership, has not transacted business within New Mexico and is therefore not subject to in personam jurisdiction in the New Mexico courts.

POINT [V]: General Atomic has not committed any tortious acts within New Mexico.

As to Point I, service of process in this cause was effected by serving the statutory agent of Gulf in New Mexico. Service on the statutory agent of a corporation is personal service. *Seaboard Coast Line Railroad Company v. Gillis,* 294 Ala. 726, 321 So.2d 202, 205–206 (1975). Gulf is and was a general agent of the partnership described above. Section 66–1–9, N.M.S.A. 1953, of the Uniform Partnership Act, provides in part as follows:

(1) Every partner is an agent of the partnership for the purposes of its business.
* * *

It is argued that Gulf is not a party, under § 21–1–1(4)(*o* ), N.M.S.A.1953, who may receive service of process on behalf of a partnership. Fed.R.Civ.P. 4(d)(3), which is identical insofar as pertinent to New Mexico's Rule 4(*o* ), has been construed to mean that service of process on a general partner is effective service on the partner-

ship. *Porter v. Hardin,* 164 F.2d 401 (5th Cir. 1947).

A partner is a general agent of the partnership. The agency of a partner is the hallmark of that particular form of business or professional association.

Rule 4(*o* ), supra, insofar as material, provides that:

[Service shall be made.] Upon * * * a partnership * * * by delivering a copy of the summons and of the complaint to * * * [an] agent *authorized* * * * *by law to receive service of process . . . if the agent is one authorized by statute to receive service and the statute so requires, by also mail-* ing a copy to the defendant. (emphasis added).

Where the form of service is reasonably calculated to give the foreign defendant actual notice of the pending suit, the statute providing for such service is valid. *Speir v. Robert C. Herd & Co.,* 189 F.Supp. 432 (D.C.Md.1960). Every object of the rule is satisfied where the agent is of such rank and character so that communication to the defendant is reasonably certain. *Schering Corporation v. Cotlow,* 94 Ariz. 365, 385 P.2d 234, 17 A.L.R.3d 617 (1963).

We have seen that § 66–1–9, supra, of the Uniform Partnership Act, appoints Gulf an agent of the partnership. Another New Mexico statute which appoints a partner an agent to receive service of process is § 21–6–5, N.M.S.A.1953, which provides:

21–6–5. *Suits against partners—Joinder—Enforcement of judgment—Service of process.*—Suits may be brought by or against a partnership as such, or against all or either of the individual members thereof; and a judgment against the firm as such may be enforced against the partnership's property, or that of such members as have appeared or been served with summons; but a new action may be brought against the other members in the original cause of action. (*When the action is against the partnership as such, service of summons on one of the members, personally, shall be sufficient service on the firm.*) (emphasis added).

(Ch. 6, § 6, [1880] N.M. Laws)

Rule 91 of the Rules of Civil Procedure, § 21–1–1(91), states:

Rule 91. *Adopting procedural statutes.* —1. All statutes relating to pleading, practice and procedure in judicial proceedings in any of the courts of New Mexico, existing upon the taking effect of the Act of the Eleventh Legislature, . . . and all statutes since enacted by any session of the legislature relating to said subjects, or any of them except as any of said statutes heretofore may have been or hereafter may be amended or vacated by order of this court, shall remain and be in effect and have full force and operation as rules of court. [Adopted February 29, 1960. Effective on and after April 1, 1960.]

Therefore, unless the court has adopted a conflicting rule, the prior procedural statute is still in effect and this court will avoid construing a Rule of Civil Procedure and statute in a manner which creates a conflict or inconsistency between the rule and the statute. See *State v. Peavler,* 87 N.M. 443, 535 P.2d 650 (Ct.App.), rev'd on other grounds, 88 N.M. 125, 537 P.2d 1387 (1975).

Rule 4(*o* ), supra, and § 21–6–5, supra, are not inconsistent. They are complimentary. Section 21–6–5 appoints a partner an agent with authority to receive service of process. This is plainly contemplated by Rule 4(*o* ) which speaks of an agent authorized by "law" or "by statute" (§ 21–6–5) to receive service of process.

Service of process upon Gulf, a general partner, is clearly effective service on the partnership GAC. This having been decided, the issue now becomes whether or not the district court could properly exercise in personam jurisdiction over the parties and the subject matter without violating state and federal due process standards. We must now determine whether the defendant has conducted its activities so that it would be fair and reasonable to subject it to the jurisdiction of the New Mexico courts.

■ In order to subject a defendant to jurisdiction in state court, the defendant

must have certain "minimum contacts" so that the exercise of jurisdiction would not offend "traditional notions of fair play and substantial justice." *Internat. Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The Court therein stated that whether or not due process was satisfied depended upon the "quality and nature of the activity in relation to the fair and orderly administration of laws." Id. at 319, 66 S.Ct. at 160. The Court did not attempt to define what contacts were deemed sufficient but instead left the determination of what constitutes fair play and substantial justice to be decided on a case by case basis.

Following *International Shoe,* supra, the Supreme Court refined its position in *McGee v. International Life Ins. Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), where the issuance of a single insurance policy was deemed a sufficient contact to permit California to exercise jurisdiction over a Texas defendant. This, however, did not mean that all limitations on a state's jurisdictional power were abolished and in *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) the Court held that the defendant must have "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Id. at 253, 78 S.Ct. at 1240. The activity of the defendant in the forum state is not required to be directly related to the plaintiff's cause of action, *Perkins v. Benguet Mining Co.,* 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952), as long as there are sufficient contacts.

Therefore, we must look to see whether GAC's activities grant to New Mexico the power to adjudicate the issues involved herein. The plaintiff *alleges* the following activities of GAC which would constitute the transaction of business and also satisfy the "minimum contacts" test of *International Shoe,* supra:

1. Gulf contracted with UNC for the production of uranium which it knew would be produced from UNC's mines in New Mexico. Deliveries are made from New Mexico. This contract was assigned to GAC and GAC seeks specific performance in the trial court.

2. GAC contracted with UNC for 3,000,000 pounds of uranium which it knew would be produced in New Mexico. The uranium was to be delivered f. o. b. UNC's mill in New Mexico.

3. GAC engages in the business of purchasing uranium from other producers in New Mexico.

4. GAC sought to obtain a security interest in UNC's Churchrock Mine in New Mexico.

5. GAC sought a veto power over UNC's right to make further sales from its Churchrock Mine.

6. GAC claims that a dedication of ore reserves from UNC's Churchrock Mine contained in a utility agreement inures to its benefit.

7. Gulf's purchase of the largest uranium ore body in the country and the actions of GAC are an attempt to monopolize and restrain trade in uranium in New Mexico.

Although any one of the foregoing allegations alone may not be sufficient to meet the minimum contacts requirement, looking at the substance of the alleged facts and the totality of the surrounding circumstances, if the plaintiff can prove these allegations, GAC's activities have such an impact on New Mexico that we can conclude GAC has availed itself of the protection and laws of New Mexico. We feel that under such circumstances this state would have a substantial interest in the resolution of this dispute and that it is not unfair to require GAC to defend this action in state court.

The court in *In-Flight Devices Corporation v. Van Dusen Air, Inc.* 466 F.2d 220 (6th Cir. 1972) thoroughly discussed the rationale behind exercising jurisdiction over a non-resident buyer. The court stated that a party should not be required to defend in a foreign forum where it had no reasonable expectation of being subject to that forum's law. The plaintiff cannot unilaterally require a defendant to appear in a forum unless the defendant has done some

purposeful act. In *Van Dusen*, supra, the purposeful act was the entering into a contract with an Ohio corporation to manufacture goods in Ohio. The court stated, "That the making (and breaking) of a contract with the Plaintiff would have substantial consequences with the State of Ohio is a reality of which the Defendant could not have been ignorant." Id. at 227. One of the most important factors that the Sixth Circuit considered was the involvement of the buyer in the activities of the plaintiff and in the contract negotiations. "To the extent the buyer vigorously negotiates, perhaps dictates, contract terms, inspects production facilities and otherwise departs from the passive buyer role it would seem that any unfairness which would normally be associated with the exercise of long-arm jurisdiction over him disappears." Id. at 233. Accord, *Whittaker Corporation v. United Aircraft Corporation*, 482 F.2d 1079 (1st Cir. 1973).

There are many parallels between the instant suit and the fact situation in Van Dusen. The plaintiff alleges that GAC used its superior financial position to force UNC to accept contract terms that were unfavorable to UNC. UNC also alleges that GAC took an active participation in UNC's business of mining the uranium, insofar as GAC tried to obtain a security interest in the mine and a veto power over UNC's sales of uranium. The cause of action here and in *Van Dusen* was based both in contract and in tort.

The *Van Dusen* case relied heavily on the earlier Sixth Circuit opinion in *Southern Machine Company v. Mohasco Industries, Inc.*, 401 F.2d 374 (6th Cir. 1968) in which the court held that where the defendant entered into a licensing agreement with the plaintiff which had a direct impact on the commerce in Tennessee and such impact was foreseeable, subjecting the defendant to an in personam action did not violate due process. The court stated:

We are applying a constitutional standard defined in the broadest terms of "general fairness" to the defendant. Cf.

*Perkins v. Benguet Mining Co.*, 342 U.S. 437, 445, 72 S.Ct. 413, 96 L.Ed. 485 (1952). For the purposes of that standard, business is transacted in a state when obligations created by the defendant or business operations set in motion by the defendant have a realistic impact on the commerce of that state; and the defendant has purposefully availed himself of the opportunity of acting there if he should have reasonably foreseen that the transaction would have consequences in that state. * * * (footnotes omitted). Id. at 382–383.

GAC clearly meets this standard. Although GAC has stated that UNC could have fulfilled its contract from any uranium mine in the country, it was obvious from the dealings of its predecessor corporation and its own dealings with UNC that the uranium would be produced in New Mexico from UNC's New Mexico mines. It is also clear that GAC knew or should have known that the sale of millions of tons of uranium involving billions of dollars would have a profound economic and ecological effect in this state. The fact that GAC is a California partnership and UNC is a Delaware corporation does not compel New Mexico to refrain from exercising its powers. Considering that the subject matter of the contract (e. g., uranium), the performance of the contract (e. g., the mining and shipping of the uranium), the breach of contract, and the tortious activity of GAC (e. g., restraint of trade) are all intimately concerned with New Mexico, these are the kinds of matters upon which jurisdiction may rest. Of course, proof of these allegations must be shown at a trial on the merits.

GAC relies on *Telephonic, Inc. v. Rosenblum*, 88 N.M. 532, 543 P.2d 825 (1975) and *Vacu-Maid, Inc. v. Covington*, 530 P.2d 137 (Okl.App.1974) for the proposition that an out-of-state buyer does not have the requisite contacts to be required to defend in this forum. GAC's reliance is misplaced because the present fact situation (assuming again that plaintiff's allegations are true) is so

different as to make those cases inapplicable.

In *Telephonic, Inc.,* supra, the only contacts the defendant had with New Mexico were some long distance calls and a contract which provided that the signing constituted "transacting business." Even though Rosenblum was also an out-of-state buyer of Telephonic's services, there was no product produced, manufactured, or shipped and no active participation by the defendant in the business affairs of Telephonic. Clearly the defendant did not have the requisite contacts.

We also agree with *Vacu-Maid,* supra, that in many instances an out-of-state buyer would not be subject to local jurisdiction because "the seller is the aggressor or initiator in the forum and by selling his product in the state he receives the benefit and protection of the forum state's laws, and * * * allowing jurisdiction over 'passive' buyers would tend to extinguish state lines and also to discourage out-of-state purchasers from dealing with resident sellers." Id. at 141. But the opinion continues, "There are, however, cases in which the nature of the transactions and the defendant's activities cause the court to find that jurisdiction over the foreign defendant would not offend 'traditional notions of fair play and substantial justice.' (citations omitted)." Id. at 141. In *Vacu-Maid,* the defendant agreed to promote and sell the plaintiff's product but the defendant was simply a passive purchaser. In the present case GAC cannot be characterized as such. Instead, we feel that the rationale set out above in *Southern Machine Company v. Mohasco Industries, Inc.,* supra, and *In-Flight Devices Corp. v. Van Dusen Air, Inc.,* supra, more appropriately applies in the present case.

We affirm the trial court. Accordingly, the balance of the points offered as error are not pertinent in resolving this interlocutory appeal. These points, if appropriate, would best be decided in a trial on the merits.

IT IS SO ORDERED.

MONTOYA, SOSA and EASLEY, JJ., concur.

OMAN, C. J., not participating.