**ARCHITECTURAL BUILDING COM-PONENTS CORPORATION, a foreign corporation, Petitioner,**

v.

**Honorable Richard COMFORT, Special Judge of the District Court of Tulsa County, Oklahoma, and Allied Steel Products Corporation, Respondents.**

No. 47354.

Supreme Court of Oklahoma.

Nov. 5, 1974.

**308**

Ungerman, Grabel & Ungerman, by Hawley C. Kerr, Tulsa, for petitioner.

Sonberg & Waddel, by Richard T. Sonberg, Tulsa, for respondents.

DOOLIN, Justice.

What constitutes due process in the area of civil proceedings and process is raised in this case. Specifically, what are the "minimum contacts" and the fundamental concepts of "fair play and substantial justice" necessary under International Shoe Corp. v. Washington, 326 U.S. 310, 66 S. Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057, and Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283, before the long arm statute enacted by the Oklahoma Legislature[1] shall become operative? Before commencing to dispose of this matter, we feel compelled to note that due process may not be the "genius" or discovery of American Jurisprudence but we cannot help but comment that it has occupied and continues to demand a large part of the attention of the Federal and State courts of this Nation.

The facts are comparatively simple.

Petitioner, Architectural Building Components Corp., is a foreign corporation not domesticated in Oklahoma and maintaining its principal place of business in Chicago, Illinois. Allied Steel Products Corp., Respondent, does business in Oklahoma, and whether or not it is a domesticated corporation is immaterial, for its principal place of business is in Tulsa, Oklahoma, where the story begins.

In September, 1972, Petitioner, without direct solicitation from Allied Steel, made a long distance call from Chicago to Tulsa for the purpose of buying a given quantity of merchandise consisting of steel products to be delivered f.o.b. Chicago by Allied. On the same day Petitioner mailed its confirming purchase order to Allied Steel in Tulsa, noting the existence of the telephone order on same. Thereafter Allied Steel shipped to the Petitioner in November, 1972, a *lesser* quantity of merchandise than ordered and promptly rendered an invoice a few days later. When the merchandise arrived (short certain items of consequence according to Petitioner) additional communication between Chicago and Tulsa ensued, initiated by Petitioner, and centering on Allied's failure to deliver all items.

When Petitioner refused to pay for the merchandise an action was filed in the Tulsa County District Court and service was had by mail under 12 O.S.1971 § 1702.01(a)(3); proof of service was made as required by 12 O.S.1971 § 1702.01(b). Within proper time, Petitioner challenged such service by special or limited appearance and Motion to Quash and Dismiss, referring in its Motion to copies of the purchase order, invoice and bill of lading attached to Allied's Petition and attaching to the Motion an affidavit sworn to by Petitioner's President alleging, among other things, that the Tulsa County District Court was without personam jurisdiction in that Petitioner had never engaged in any of the acts, actions or activities enumerated in the Oklahoma Statutes. The affidavit of Petitioner's President also alleged Allied's failure to product the quantity of merchandise originally ordered by Petitioner. The Motion raises questions of United States Constitutional due process. We are not presented with the question of the rights of the parties under the Uniform Commercial Code, but solely with questions of civil due process.

The test or requirement of "minimum contacts" that a defendant must have maintained or established in the state or forum of the plaintiff's choice is such that the maintenance of a suit based thereon

1. 12 O.S.1971 §§ 187 and 1701.03.

does not offend "traditional motions of fair play and substantial justice", *International Shoe*, supra. Some twelve and one-half years after *International Shoe* the Supreme Court of the United States in Hanson v. Denckla, supra, felt constrained to sound this word of caution:

"But it is a mistake to assume that this trend heralds the eventual demise of all restrictions on personal jurisdiction of state courts. See Vanderbilt v. Vanderbilt, 354 U.S. 416, 418, 77 S.Ct. 1360, 1362, 1 L.Ed.2d 1456, 1459. Those restrictions are more than a guarantee of immunity from inconvenience or distant litigation. They are a consequence of territorial limitations on the power of the respective States. However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the 'minimal contacts' with that State that are a prerequisite to its exercise of power over him."

This Court last dealt with and interpreted 12 O.S.1971 § 1701.03 in Fidelity Bank, N.A. v. Standard Industries, Inc., 515 P.2d 219 (1973), and stated that "this statute was intended to extend the jurisdiction of Oklahoma courts over nonresidents to the outer limits permitted by the United States Constitution's due process provisions." We cited Vemco Plating, Inc. v. Denver Fire Clay Company, Okl., 496 P.2d 117, 119 and B. K. Sweeney Co. v. Colorado Interstate Gas Co., Okl., 429 P.2d 759, 762. We have always acknowledged the supremacy of the U.S. Constitution; thus, the limitation or qualification of Hanson v. Denckla, supra, suggests that we should pause and note its warning—"it is a mistake to assume that this trend heralds the eventual demise of all restrictions on personal jurisdiction of state courts."

Our own Constitutional provisions in Article II, Sec. 7, guarantee to *all* persons due process by stating "no person shall be deprived of life, liberty, or property without due process of law." (emphasis added).

Respondents refer us to several cases; first, Anderson, Clayton & Co. v. Atlas Concrete Pipe, Inc., 41 Mich.App. 58, 199 N.W.2d 531 (1972). The parties in that case stipulated that a Michigan corporation entered into a contract to purchase certain equipment by mail and telephone with a resident of Texas. Payment was to be made in Texas. The Michigan corporation refused delivery of the merchandise and returned same to Texas, whereupon the Texas resident filed suit in the Texas courts and issued process under that state's long arm statute. Upon obtaining judgment, proceedings were commenced in Michigan and the Michigan court gave full faith and credit to the Texas judgment. As we interpret the facts in the Michigan case last mentioned, they closely parallel the facts in Yankee Metal Products Co. v. District Court of Oklahoma Co., Okl., 528 P.2d 311, this day decided; for the Texas manufacturer or assembler in that case fabricated the requested clamps and mounting brackets at the request of the Michigan buyer. The Supreme Court of Michigan found applicable Article 2031b, § 4 Vernon's Annotated Texas Revised Civil Statutes [2] and thus gave full faith and credit to the Texas judgment. There is no like or similar provision found in 12 O.S. 1971 § 187 or 12 O.S.1971 § 1701.03, and we express no opinion nor imply any constitutional infirmity to a long arm provision such as found in the Texas Statute.

We are also referred to Cook Associates, Inc. v. Colonial Broach & Mach. Co., 14 Ill.App.3d 965, 304 N.E.2d 27 (1973) where the holding was that a single business transaction consisting of a telephone contract provided "the necessary jurisdictional minimum contacts for the purposes of in personam jurisdiction." The Illinois court noted its reasons for holding that the non-

---

2. "For the purpose of this Act . . . any foreign corporation . . . shall be deemed doing business in this State by entering into contract by mail or otherwise with a resident of Texas to be performed in whole or in part by either party in this State. . . ."

resident defendant had submitted to personam jurisdiction, but, upon careful examination, we find the facts in that case are distinguishable from those in the instant case.

It is our opinion that the official syllabus of the Minnesota Supreme Court properly applies the rule when it states in Marshall Egg Transport Co. v. Bender-Goodman Co., 275 Minn. 534, 148 N.W.2d 161, 162 (1967):

> "Where it appears from the record that a telephone conversation between the president of defendant, a New York corporation, and the president of plaintiff, a Minnesota corporation, together with the mailing of a $3,600 check by defendant to plaintiff were the only contacts by defendant with the State of Minnesota or anyone within the state; and where the trial court determined that it was undisputed that defendant did not maintain an office or place of business or have any agents or employees operating within Minnesota, *held,* the trial court did not obtain jurisdiction over defendant by service under Minn.St. 303.13, subd. 1(3), and correctly granted defendant's motion to dismiss and to quash the summons."

See also Geneva Industries, Inc. v. Copeland Construction Corp., 312 F.Supp. 186 at page 188 (U.S.D.C., N.D.Ill.,1970) for a case in agreement with the Minnesota holding and in which case the following observation was made:

> "The notion that any customer of an Illinois based mail order house such as Sears Roebuck or Montgomery Ward would be subject to the jurisdiction of Illinois courts is obviously violative of the most minimal standard of minimum contacts and the fundamental structure of the federal system."

In passing, we find it unnecessary to comment upon what difference aggressive sales tactics and the possible distinction between application of the long arm statute in a suit against a non-resident seller and a suit against a non-resident buyer may have, for such facts were not developed herein.[3]

■ We note and believe it significant under the facts of this case that Allied Steel has failed to supply the quantity of goods ordered by the Petitioner. The facts (as agreed upon) indicate the full purchase price of the merchandise was $2,622.99, and when the invoice and delivery was made it was in the sum of $931.39—basically this discrepancy in quantity offends this Court's notion and belief in "fair play and substantial justice," which we find necessarily qualifies the minimum contact theory of *International Shoe,* supra.

■ Likewise, it cannot be said that Petitioner has *purposely* availed himself of the privilege of conducting business activities in Oklahoma. This point is answered by the Supreme Court of the United States in Hanson v. Denckla, supra, wherein the Supreme Court states:

> "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."

■ Under the authority of Article VII, Sec. 4, Oklahoma Constitution, and Crescent Corporation v. Martin, 443 P.2d

3. See Geneva Industries, Inc. v. Copeland Construction Corp., supra, 312 F.Supp. at 189; Fourth Northwestern Nat. Bank v. Hilson Industries, 264 Minn. 110, 117 N.W.2d 732 (1962); McQuay, Inc. v. Samuel Schlosberg, Inc., 321 F.Supp. 902 (U.S.D.C.Minn., 1971).

111 (Okl.1968), we believe prohibition is a proper remedy for relief under the facts and circumstances of this case.

Application to file Petition for Writ of Prohibition granted; Writ issued.

DAVISON, C. J., WILLIAMS, V. C. J., and IRWIN, BERRY, LAVENDER, BARNES and SIMS, JJ., concur.