JEM ENGINEERING AND MANUFAC-
TURING, INC., an Oklahoma
Corporation, Plaintiff,

v.

TOOMER ELECTRICAL COMPANY,
INC., a Louisiana Corporation,
Defendant.

No. 75–C–487.

United States District Court,
N. D. Oklahoma.

Feb. 27, 1976.

Darrell E. Williams, Tulsa, Okl., for plaintiff.

William C. Anderson, Tulsa, Okl., for defendant.

## ORDER

COOK, District Judge.

The Court has before it for consideration a Motion to Dismiss filed by defendant, Toomer Electrical Company, Inc., in which defendant alleges it was served with process in this cause in the State of Louisiana; that it is a Louisiana corporation, not domesticated in the State of Oklahoma and not doing business in the State of Oklahoma; and that the claim for relief set forth in the Complaint is not of the type which would provide a basis for in personam jurisdiction as to this defendant under the Oklahoma "long-arm" statutes, 12 O.S.1971 § 187 and 1701.01 et seq.

The affidavits submitted by the parties in support of the Motion to Dismiss and in opposition thereto are uncontradicted as to the following factual background of the case at bar.

Defendant, Toomer Electrical Company, Inc., (hereinafter Toomer) is incorporated under the laws of the State of Louisiana. It is not domesticated in the State of Oklahoma. It does not now and never has had any salesmen, employees, or other agents or representatives operating in the State of Oklahoma, either regularly or intermittently, for the purpose of soliciting business, or otherwise. In June of 1974, Toomer bid upon and was awarded the prime contract on a project advertised by the Louisiana Department of Highways, for the installation of certain traffic signals and miscellaneous equipment, on a highway located in the City of Baton Rouge, Louisiana. This project included furnishing and installation of certain steel light poles of various lengths, which poles were required to comply with and meet the standards set by the plans and specifications of the Louisiana Department of Highways for this project. Toomer originally negotiated with a Texas company in regard to the acquisition of certain steel poles. During these negotiations, the Texas company informed Toomer that if the Texas company supplied the steel poles, it would not manufacture them itself, but instead would acquire them from Jem Engineering and Manufacturing, Inc., of Tulsa, Oklahoma (hereinafter Jem), on a "sub-sub" contract basis. The Texas company and Toomer were, however, unable to reach agreement in regard to price; and negotiations were halted. Thereafter, Jem called Toomer at its offices in Baton Rouge, Louisiana, inquiring whether or not Toomer had successfully made arrangements to purchase the steel poles from any other supplier. The call were initiated by Jem and

unsolicited by Toomer. Upon being told that they were free to submit a price quotation, Jem mailed a written quotation to Toomer on August 27, 1974. Jem submitted said quotation without asking for and without having been furnished by Toomer with the plans and specifications of the Louisiana Department of Highways regarding the steel poles. After receipt of the price quotation, Toomer advised Jem that its price quotation was based on an erroneous number of units required for the job and was therefore unacceptable. The affidavit of Maston B. Wolfe, Jr., filed on behalf of plaintiff states that on September 16, 1974, Jem, after considerable discussion with Toomer concerning its requirements for the manufacture of the steel poles, verbally agreed with Toomer upon a price for the sale of the steel poles. Affiant Wolfe further states that Jem submitted drawings to Toomer concerning said poles on October 18, 1974; that Toomer, after receipt of Jem's drawings, made changes in the quantities and requested that larger anchor bolts be provided. The parties are in agreement that thereafter in the early part of November Mr. White, Sales Manager of Jem, went to Baton Rouge to clarify the new requirements. The Louisiana Department of Highways' plans and specifications were delivered to Mr. White at that time. As a result of his visit, a price was agreed upon and Toomer sent a purchase order to Jem in that amount on November 11, 1974. The affidavit submitted by defendant states, and is uncontradicted, that a condition of Toomer's purchase order of November 11 was that Jem submit drawings of its steel pole assembly to Toomer, to be submitted in turn by Toomer to the Louisiana Department of Highways for approval. Such approval was a requirement of the project under applicable law, and submission and approval of conforming drawings was a condition of the November 11 purchase order. Drawings were submitted by Jem and received by Toomer on or shortly after November 14, 1974. The affidavit submitted by defendant further states that these drawings did not conform to and comply with the plans and specifications of the Louisiana Department of Highways; consequently, on November 19, Toomer cancelled its purchase order of November 11.

■ A federal district court must look to the law of the State wherein it sits to determine whether it has in personam jurisdiction over the defendant. *Doyn Aircraft, Inc. v. Wylie*, 443 F.2d 579 (10th Cir. 1971). Plaintiff relies upon the Oklahoma "long-arm" statutes, 12 O.S.1971 § 187 and 1701.-01 et seq. and 18 O.S.1971 § 1.204a as a basis for in personam jurisdiction over the defendant.

Title 12 O.S.1971 §§ 187(a) and 1701.03 grant in personam jurisdiction over resident or non-resident corporations which transact business in the State of Oklahoma. The only limitation placed upon a court in exercising in personam jurisdiction over non-residents transacting any business in Oklahoma is that of due process. *Vacu-Maid, Inc. v. Covington*, 530 P.2d 137 (Okl.Ct.App. 1974). Similarly, 18 O.S.1971 § 1.204a authorizes service of process on "foreign corporations" that are "doing," "engaging in or transacting business" in Oklahoma. According to the courts of Oklahoma, the range of permissible state action pursuant to this statute is also as wide and the boundary line extends as far as the minimum standards of federal due process permit. *B. K. Sweeney Co. v. Colorado Interstate Gas Co.*, 429 P.2d 759 (Okl.1967). This limitation is known as the "minimum contacts" rule pronounced by the United States Supreme Court in *International Shoe Co. v. State of Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

■ The Supreme Court extended the minimum contacts rules in *McGee v. International Life Ins. Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). From *McGee* and *International Shoe*, we find the rule to be that a non-resident of the forum is subject to in personam jurisdiction in the forum with which he had minimum contacts, providing maintenance of the suit does not offend traditional notions of fair play and substantial justice. Just what amounts to minimum contacts must be decided by the

facts of each individual case. *Vacu-Maid*, supra.

The courts of Oklahoma have made it clear that the Oklahoma long-arm statutes were intended to extend the jurisdiction of Oklahoma courts over non-residents to the outer limits permitted by the due process requirements of the Fourteenth Amendment of the United States Constitution. *Vacu-Maid, Inc. v. Covington*, supra; *Carmack v. Chemical Bank New York Trust Co.*, 536 P.2d 897 (Okl.1975); *Yankee Metal Products Co. v. District Court of Oklahoma*, 528 P.2d 311 (Okl.1974); *Architectural Building Components Corporation v. Comfort*, 528 P.2d 307 (Okl.1974); *Vemco Plating, Inc. v. Denver Fire Clay Co.*, 496 P.2d 117 (Okl.1972); *Crescent Corp. v. Martin*, 443 P.2d 111 (Okl.1968); *Simms v. Hobbs*, 411 P.2d 503 (Okl.1966); *Marathon Battery Co. v. Kilpatrick*, 418 P.2d 900 (Okl.1965).

There is no question but that in personam jurisdiction will be upheld in Oklahoma where the non-resident defendant is a *seller* who has shipped goods into Oklahoma, even if such shipment was an isolated or infrequent occurrence. See *Vemco Plating, Inc. v. Denver Fire Clay Co.*, supra. However the Oklahoma courts are more reticent to uphold in personam jurisdiction when the defendant is a non-resident buyer. *Vacu-Maid*, supra. As stated in *Vacu-Maid*, "The reason most often given for this buyer-seller distinction is that the seller is the aggressor or initiator in the forum and by selling his product in the state he receives the benefit and protection of the forum state's laws, and hopefully profits from its business therein. Further, allowing jurisdiction over 'passive' buyers would tend to extinguish state lines and also to discourage out-of-state purchasers from dealing with resident sellers."

The status of the parties as buyer or seller, however, is not totally determinative of the question of minimum contacts sufficient to provide a jurisdictional basis. In *Yankee Metal Products Company v. District Court*, supra, the court held that it had jurisdiction over a non-resident buyer defendant who had initiated a transaction by ordering a large number of harnesses to be custom built according to samples to be furnished by defendant. The court determined that the "active-purchaser, passive-purchaser" classification affords ample protection to a resident manufacturer who, at the special solicitation of a non-resident buyer, manufactures custom built materials or products according to specifications or samples furnished by the buyer.

Plaintiff relies heavily on the holding in *Yankee Metals* to support its contention of jurisdiction. However, there are several factors which distinguish *Yankee Metals* from the case at bar. To begin with, in *Yankee Metals* the defendant buyer initiated the transaction. In the case at bar, it is undisputed that Jem made the initial contact with the defendant and aggressively sought to supply the steel poles. In *Yankee Metals* the harnesses were custom built according to the samples and specifications of the defendant. In the case at bar, the specifications were those of the Louisiana Department of Highways. The Court notes that plaintiff sought to secure defendant's order and submitted a bid not based upon specifications supplied by defendant. Plaintiff either secured specifications from another source or did not base the bid on any particular specifications. (Defendant did not supply plaintiff with a copy of the specifications of the Louisiana Department of Highways until November 11, 1974.) Furthermore, it appears that any negotiations which defendant participated in were basically in regard to plaintiff's compliance with the specifications of the Louisiana Highway Department and not particular requirements of the defendant.

Plaintiff also cites *Simpson Timber Co. v. Great Salt Lake Minerals and Chemicals Corporation*, 296 F.Supp. 243 (D.Or.1969). In *Simpson*, the Court upheld jurisdiction based primarily upon the fact that the defendant purposefully caused the plaintiff to manufacture $70,000.00 worth of parts in its Oregon plant, causing substantial impact on commerce in Oregon. It is doubtful, however, that the criteria used by the Ore-

gon Court would be a proper standard to be applied in the case at bar inasmuch as the Oklahoma court in *Vacu-Maid*, in discussing *Simpson*, stated: "The decision has been severely criticized because of its apparent subjection of all foreign purchasers to long arm jurisdiction." The Oklahoma court then refers to the holding in *McQuay, Inc. v. Samuel Schlosberg, Inc.*, 321 F.Supp. 902 (D.Minn.1971). In *McQuay*, defendant, a New York corporation, had no office nor agent in Minnesota nor had it ever gone into Minnesota to solicit any business. Plaintiff, a Minnesota corporation, through its New York agent, solicited defendant to make a purchase of plaintiff's air conditioning equipment. The purchase contract was negotiated and executed in New York. Delivery of the equipment subsequently was made in New York. The purchase price was payable in Minnesota. The Court, in dismissing the action for lack of jurisdiction, stated:

> "The general philosophy of long-arm statutes is to protect citizens of a state where a nonresident comes into the State directly or indirectly to sell something or solicit sales, or where, even though out of state, a nonresident sells a product which is brought into or comes to rest in the State. The nonresident thus receives the benefit and protection of the state's laws and profits or hopes to from its adventure therein. The nonresident is the aggressor or initiator. It is appropriate that such a nonresident seller should respond to service of process in that state. Quite the contrary, however, where in a case such as at bar the plaintiff is the movant, the aggressor so to speak not in Minnesota but by going to New York, a soliciting defendant's business, making a contract in New York, selling the defendant merchandise to be manufactured in Minnesota and delivered in New York and the price to be remitted to plaintiff in Minnesota. If merely because the manufacturing process and payment of the price is to occur in Minnesota such confers jurisdiction in Minnesota, then it's hard to conceive of any case where the long-arm statutes do not apply."

Plaintiff cites *Simpson* for the contention "that business is transacted in a state so as to give state in personam jurisdiction over a party when obligations created by defendant or business operations set in motion by defendant have realistic impact on commerce of that state." While this does not appear to be the criteria applied by the State of Oklahoma, it is doubtful that even applying the holding in *Simpson* would sustain jurisdiction in the case at bar. In this connection, plaintiff states by way of affidavit that Jem purchased steel at an expedited price to comply with the special requirements for the design and production of the steel poles and that Jem modified its plant operations to manufacture the specially designed steel poles. Further, that Jem expended monies with the State of Oklahoma and suffered financial hardship. While the Court sympathizes with plaintiff, it is clear that although plaintiff may have had assurances from Toomer that Jem could supply the steel poles in question, the final acceptance was contingent upon acceptance of plaintiff's designs by the Louisiana Department of Highways. The affidavit submitted by defendant states that a condition of Toomer's purchase order of November 11 was that Jem submit drawings of its steel poles assembly to Toomer, to be submitted in turn by Toomer to the Louisiana Department of Highways for approval. "Such approval was a requirement of the project under applicable law, and submission and approval of conforming drawings was a condition of the November 11 purchase order." This statement is supported by an examination of the November 11 purchase order which shows, for example, that after the words "Date Required" the words "After Approval" are written. The following statement is written in: "Furnish 12 copies drawings immediately for approval." Typed at the bottom of the purchase order are the provisions: "All items as per plans and specifications." "This order is subject to cancellation if the above terms and conditions are not met." In light of the fact that the order was contingent upon approval by a third party, plaintiff's ex-

pending of funds was based upon an expectancy. It was plaintiff's conduct, therefore, rather than defendant's which might have an impact on the State of Oklahoma.

It is not the conduct of the plaintiff or the possible effect on the plaintiff of its own conduct that determines jurisdiction, but rather whether the conduct of defendant can be said to amount to "minimum contacts" sufficient to comport with fair play. Toomer had a contract with the Louisiana Department of Highways and in order to perform that contract could have accepted bids from anywhere in the United States. In negotiating with a prospective bidder, aside from cost, defendant's paramount concern was that the product supplied conform to the specifications of the Louisiana Department of Highways. All bidders also knew that any product supplied would have to conform to those specifications. The steel poles were, therefore, a type of "stock item" which defendant could have purchased from any bidder. In this situation, defendant could best be categorized as a "passive purchaser."

Plaintiff initiated the transaction by contacting defendant in the State of Louisiana and submitting a bid. The contract was entered into in the State of Louisiana, the performance of the contract was to be in the State of Louisiana, the specifications were those of the State of Louisiana, final approval of the drawings was by the State of Louisiana, and clearly this matter should be litigated in the State of Louisiana.

It is therefore the determination of the Court that defendant's Motion to Dismiss should be, and hereby is, sustained.