**TAMAQUA CABLE PRODUCTS CORP.**

v.

**DUNLAP ELECTRONICS, INC.**

Civ. A. No. 81–2545.

United States District Court,
E. D. Pennsylvania.

Jan. 4, 1982.

Gordon W. Gerber, Philadelphia, Pa., for plaintiff.

Julia A. Conover, Philadelphia, Pa., for defendant.

MEMORANDUM

HUYETT, District Judge.

Defendant Dunlap Electronics, Inc. (Dunlap) has filed a motion to dismiss this action for lack of personal jurisdiction, pursuant to Fed.R.Civ.P. 12(b)(2). Dunlap contends that it lacks the requisite "minimum contacts" with Pennsylvania necessary to subject it to personal jurisdiction under the Pennsylvania long-arm statute, 42 Pa.C.S.A. § 5301 *et seq.*

This action arises from a dispute between Tamaqua Cable Products Corp. (Tamaqua) and Dunlap concerning the manufacture of cable for use by Dunlap in fulfilling a contract with the United States Department of Interior. Dunlap was required to subcontract for cable products from a list of suppliers approved by the Department of Interior. (Affidavit of Robert J. MacDonald, ¶ 2). The specifications for the cable product were mandated by the Department of Interior. (*Id.*) In connection with this project, Dunlap contacted several suppliers on the approved list, including Tamaqua. (*Id.*) None of the potential suppliers contacted by Dunlap except for Tamaqua were Pennsylvania corporations or businesses with their principal places of business or manufacturing facilities in Pennsylvania. (*Id.* at ¶ 4) Tamaqua provided the lowest quote of any of the suppliers contacted, and Dunlap therefore included Tamaqua's quote in the bid submitted to the Department of Interior, which bid was ultimately accepted by the Department. (*Id.* at ¶ 2)

Tamaqua is alleged in the complaint[1] to be a Pennsylvania corporation with its principal place of business in Schuylkill Haven, Pennsylvania. (Complaint at ¶ 1) Dunlap is a Delaware corporation, with its principal place of business in California, engaged in the business of electronic components distribution. (Affidavit of Robert J. MacDonald at ¶ 5) Dunlap operates exclusively in the California and Nevada geographical areas. (*Id.*) Dunlap does no business in Pennsylvania. Dunlap has no agent located or operating in Pennsylvania, ships no merchandise into Pennsylvania, provides no services in Pennsylvania, has no interest in real or personal property in Pennsylvania, and has never made any application to any Pennsylvania governmental unit for any license, permit, registration or similar instrument or authorization. (*Id.* at ¶¶ 7 through 11)

Dunlap's sole contact with Pennsylvania is the single act of contracting to purchase cable from Tamaqua, to be manufactured in accordance with government specifications, for use in fulfilling a contract with the United States Department of Interior. The contract between the parties did not call for performance in any specific location. While the contract may have implicitly contemplated that the cable would be manufactured at Tamaqua's Pennsylvania plant, the contract did not require Tamaqua to do this. Thus, the fact that the manufacturing process was undertaken in Pennsylvania was the decision of the plaintiff, not the defendant. The sole issue before me is whether or not this single contact is sufficient to support personal jurisdiction over Dunlap, consistent with the due process clause of the U.S. Constitution.

Plaintiff seeks to obtain jurisdiction over Dunlap by long-arm statute. Federal Rule of Civil Procedure 4(d) provides, in effect, for service of process upon a non-resident defendant, not found in the forum state, in accordance with the long-arm statute of the forum, here 42 Pa.C.S.A. § 5301 *et seq.* Long-arm service will not suffice to confer personal jurisdiction, however, if the defendant lacks the "minimum contacts" with

Pennsylvania necessary to make maintenance of the suit in this district consistent with "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

Section 5322(b) of the Pennsylvania long-arm statute extends the exercise of long-arm jurisdiction to the fullest extent permitted under the due process clause of the Constitution of the United States. The Pennsylvania Superior Court has stated that "since this statute makes the exercise of jurisdiction over a non-resident coextensive with the permissible limits of due process, we need only decide whether it would be a denial of due process to hold appellee subject to suit in Pennsylvania." *Koenig v. International Brotherhood of Boilermakers*, 284 Pa.Super. 558, 426 A.2d 635 (1980).

Thus, the sole issue before me is whether or not Dunlap's contacts with Pennsylvania are sufficiently weighty that to require it to submit to jurisdiction in Pennsylvania would be consistent with the due process clause. Given the nature of the single, isolated contact with Pennsylvania, jurisdiction over Dunlap is not sustainable.

The Pennsylvania courts have employed a three-part test to determine if long-arm jurisdiction is consistent with due process:

First, the defendant must have purposefully availed itself of the privilege of acting within the forum state thus invoking the benefits and protections of its laws.... Secondly, the cause of action must arise from defendant's activities within the forum state .... Lastly, the acts of the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over it reasonable.

*Proctor & Schwartz, Inc. v. Cleveland Lumber Co.*, 228 Pa.Super.Ct. 12, 323 A.2d 11, 15 (1974) (citations omitted). Applying these three criteria, Dunlap's activities fall short of the requisite "minimum contacts."

It is doubtful whether Dunlap's activities in agreeing to purchase cable products from

---

**1.** For purposes of this motion the allegations of Tamaqua's complaint are taken as true.

Tamaqua can be said to constitute "purposeful availment" of the privilege of acting in Pennsylvania. *See Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 123 (1958). Dunlap at no time acted in Pennsylvania, nor did any of its employees enter Pennsylvania for any purpose connected with the contract. (Affidavit of Robert J. McDonald at ¶ 2) The only contact with Pennsylvania was that Tamaqua evidently intended to perform its contractual obligations—to manufacture the cable product in accordance with the government specifications—in Pennsylvania. However, the contract between the parties did not require it to be manufactured in Pennsylvania.

In *Lakeside Bridge & Steel Co. v. Mountain State Construction Co., Inc.,* 597 F.2d 596 (7th Cir. 1979), the Court of Appeals for the Seventh Circuit concluded, on facts analogous to these, that a purchaser of goods had not purposefully availed itself of the privilege of conducting business in the state where the goods were to be manufactured. *See also Jem Engineering & Mfg., Inc. v. Toomer Elec. Co.,* 413 F.Supp. 481 (N.D.Okla.1976). In *Lakeside,* the purchaser was a West Virginia corporation which contracted with a Wisconsin corporation to purchase structural assemblies for use in construction work on a dam and reservoir in Virginia. All contacts concerning the contract took place outside Wisconsin, or by mail or telephone; however, the goods were to be manufactured in Wisconsin. The court concluded that these contracts were not sufficient to support jurisdiction over the West Virginia purchaser in Wisconsin, stating:

> Viewed realistically, the contacts with Wisconsin in this case consist solely of "[t]he unilateral activity of [one] who claim[s] some relationship with a nonresident defendant," and this "cannot satisfy the requirement of contact with the forum State." *Hanson v. Denckla supra,* 357 U.S. at 253, 78 S.Ct. at 1240. Although Mountain State in a sense caused the activity in Wisconsin by placing the order, the contract between the parties left Lakeside in absolute control over where it would conduct that activity, and

it made this decision and conducted the activity unilaterally. Mountain State's belief, which we may assume existed, that Lakeside would choose to perform its contractual obligations in Wisconsin does not constitute an invocation of the benefits and protections of Wisconsin's laws; Mountain State did not "purposefully avail itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."

*Id.* at 603 (footnote omitted).

Regardless of whether Dunlap can be viewed as "purposefully availing" itself of conducting activities in Pennsylvania, however, the contacts with Pennsylvania do not have "a substantial enough connection with [Pennsylvania] to make the exercise of jurisdiction over it reasonable." *Proctor & Schwartz, Inc. v. Cleveland Lumber Co.,* 323 A.2d 11 (1974). Many courts have concluded that it is basically unfair to subject the "passive purchaser" to jurisdiction in a distant forum. *Whittaker Corporation v. United Aircraft Corp.,* 482 F.2d 1079 (1st Cir. 1973); *In-Flight Devices Corp. v. Van Dusen Air, Inc.,* 466 F.2d 220 (6th Cir. 1972); *Branch Cheese Co., Inc. v. Philip Olender & Co.,* 413 F.Supp. 109 (E.D.Wis. 1976); *Jem Engineering & Manufacturing, Inc. v. Toomer Electric Co., Inc.,* 413 F.Supp. 481 (N.D.Okla.1976). *Cf. Watson McDaniel Co. v. National Pump & Control, Inc.,* 493 F.Supp. 18 (E.D.Pa.1979) (jurisdiction over defendant was proper because it was not a mere "passive purchaser"). The rationale for this conclusion is that the passive purchaser is less likely to set the terms of the deal, is not involved in manufacturing the goods, and in general has less control over the transaction than the seller. *See In-Flight Devices Corp. v. Van Dusen Air, Inc.,* 466 F.2d at 233. In addition, the seller's forum has an interest "in not discouraging foreign purchasers from dealing with resident sellers for fear of having to engage in litigation in distant courts . . . ." *Whittaker Corporation v. United Aircraft Corp.,* 482 F.2d at 1085. Nevertheless, courts have also recognized that "to the

extent the buyer vigorously negotiates, perhaps dictates, contract terms, inspects production facilities and otherwise departs from the passive buyer role", the exercise of jurisdiction over the foreign buyer becomes more reasonable. *In-Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d at 233.

A close examination of the facts here leads to the conclusion that Dunlap was a passive purchaser with respect to its dealings with Tamaqua. Dunlap was required to subcontract with a supplier approved by the Department of Interior, of which Tamaqua was one. Although Dunlap made the initial contact with Tamaqua, Dunlap at the same time contacted several other approved suppliers concerning this project. The specifications for the cable were not set by Dunlap, but by the Department of Interior, a third-party.[2] Tamaqua provided the lowest quote of all approved suppliers contacted and, for that reason, Tamaqua's offer was accepted by Dunlap. Thus, Dunlap did not "dictate" either the price nor the product specification to Tamaqua.

In the case of *Jem Engineering & Manufacturing, Inc. v. Toomer Electric Co., Inc.*, 413 F.Supp. 481, the court was faced with the analogous question of whether the due process clause permitted an Oklahoma court to exercise long-arm jurisdiction over a Louisiana purchaser where the contract specifications were dictated by a third-party. In *Jem*, the Louisiana purchaser sought steel poles for use in a contract awarded to it by the Louisiana Department of Highways. The poles had to meet the specifications set by the Department. The court concluded in these circumstances that the Louisiana purchaser was "passive":

> Toomer had a contract with the Louisiana Department of Highways and in order to perform that contract could have accepted bids from anywhere in the United States. In negotiating with a prospective bidder, aside from cost, defendant's paramount concern was that the product supplied conform to the specifications of the Louisiana Department of Highways. All bidders also knew that any product supplied would have to conform to those specifications. The steel poles were, therefore, a type of "stock item" which defendant could have purchased from any bidder. In this situation, defendant could best be categorized as a "passive purchaser."

*Id.* The analysis of the district court in *Jem Engineering* is applicable to this case as well. Viewing the transaction from Dunlap's vantage point, the cable ordered from Tamaqua was indeed a "stock item" which could be purchased from any qualified bidder. Thus, the defendant was in the nature of a passive buyer who did not vigorously negotiate or dictate critical contract terms. *See also In-Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220, 233 (6th Cir. 1972). Given these facts, the assertion of personal jurisdiction over the defendant would be unreasonable.

The plaintiff's reliance upon the case of *Kingsley & Keith (Canada) Ltd. v. Mercer International Corp.*, is misplaced. *See* 435 A.2d 585 & n.1 (Pa.Super.Ct.1981); *see also* Editor's Note, 426 A.2d 618 (1980). The *Kingsley* case recognizes that as a matter of federal constitutional law a determination of the propriety of the exercise of personal jurisdiction is the result of a balancing process. In that case, the balance was tipped in favor of the exercise of jurisdiction because the defendant had acted within the state and the activity implicated the state's interest in public safety and welfare. Neither factor is involved here.

Similarly, the case of *Watson McDaniel Co. v. National Pump & Control, Inc.*, 493 F.Supp. 18 (E.D.Pa.1979) is distinguishable from the present case. In *Watson*, the defendant engaged in a course of dealings with the plaintiff and the product was custom-made to the *defendant's* specifications. Here, the defendant had only one transaction with the plaintiff. The specifications

---

2. Additionally, according to the allegations of Tamaqua's complaint, representatives of the Department of Interior visited Tamaqua's plant to inspect the cable being manufactured. (Complaint at ¶ 8).

for the product purchased were supplied not by the defendant but by a third-party.

For all the reasons stated above, I conclude that the exercise of personal jurisdiction over the defendant in this forum would violate "traditional notions of fair play and substantial justice." The defendant's motion will be granted.