**Thomas J. KENAN, Trustee of CB Financial Corporation, Plaintiff,**

v.

**Ed McBIRNEY, Defendant.**

**No. CIV–88–1664–A.**

United States District Court,
W.D. Oklahoma.

Jan. 18, 1989.

Joseph P. Titterington, Kenan & Peterson, Oklahoma City, Okl., for plaintiff.

Harry A. Woods, Jr., Mark S. Edmondson, Clyde A. Muchmore, Robert E. Bacharach, Crowe & Dunlevy, Oklahoma City, Okl., for defendant.

## ORDER

ALLEY, District Judge.

The defendant, Ed McBirney, moves the Court to dismiss the captioned case for lack of personal jurisdiction or, alternatively, to transfer the case to the Northern District of Texas. For the reasons noted below, the Court grants the defendant's motion to dismiss.

### I.

The financial relationship between CB Financial Corporation (CBFC) and the defendant, which is at the heart of this lawsuit, arose from CBFC's prior commercial dealings with two Texas companies, Forest Ridge Partners, Ltd. (Forest Ridge) and Lamar Savings Association (Lamar). As security for a loan to Forest Ridge, CBFC received an interest in "a certain real estate project." Complaint ¶ 4. Lamar owned a superior interest in the same project. Forest Ridge defaulted on its obligations to both CBFC and Lamar and, to secure its interests in the project, CBFC negotiated the right to purchase Lamar's project interest, with funds loaned to CBFC by Lamar. To obtain the Lamar loan, CBFC had to satisfy certain conditions. Specifically, CBFC had to pay the delinquent interest on Lamar's loan to Forest Ridge and reimburse Lamar for expenses it had incurred in initiating foreclosure proceedings against the project. In order to meet the conditions of the Lamar loan, CBFC, through its Chairman of the Board, Charles J. Bazarian, turned to the defendant McBirney for funds.

On behalf of CBFC, Bazarian raised the topic of a loan with the defendant McBirney during discussions between the parties in Dallas, Texas. At that time, McBirney was Chairman of the Board of Sunbelt Savings Association (Sunbelt), a Texas company. During the course of the parties' discussions regarding the loan, they formed a joint venture. In exchange for a one-half interest in the project, McBirney, agreed "to ensure that sufficient funds would be available to CBFC to close its loan from Lamar and to service this loan for an unspecified period of time." Complaint ¶ 6; see Bazarian Affidavit ¶ 6. Subsequently, Sunbelt issued a series of loans to CBFC totalling 1.5 million dollars.

As for the joint venture, following the Sunbelt loans, McBirney made "several" telephone calls from Texas to Oklahoma to discuss with Bazarian the project, McBirney's efforts to obtain a buyer for it, and the status of CBFC's loan from Lamar. CBFC subsequently defaulted on the Lamar loan. The project was sold at a non-judicial foreclosure sale. Based on the joint venture arrangement, the plaintiff instituted the instant action against the defendant McBirney for reimbursement for one-half of the losses incurred by CBFC due to its default.[1]

---

1. The Court's statement of the pertinent facts is disputed. By affidavit, the defendant McBirney denies entering into a joint venture arrangement with CBFC or, in his individual capacity, telephoning Bazarian regarding the Lamar loans. McBirney Affidavit ¶¶ 12, 15. However, on these two points, the plaintiff supports its contrary contentions with Bazarian's affidavit. Bazarian Affidavit ¶¶ 7–8. Under settled principles governing the disposition of jurisdictional motions to dismiss, the Court resolves the factual dispute in favor of the plaintiff. See, e.g.,

## II.

Both the courts and commentators have spoken recently on the legal principles and policy concerns that define the limits on personal jurisdiction. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472–76, 105 S.Ct. 2174, 2181–84, 85 L.Ed.2d 528 (1985); *Helicopteros Nacionales de Columbia v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984); *Rambo v. American Southern Ins. Co.,* 839 F.2d 1415, 1416–19 (10th Cir.1988); 4 C. Wright & A. Miller, *Federal Practice & Procedure* § 1067 (1987). The Court need not dwell on these points here. It is sufficient to note that, for the Court to exercise personal jurisdiction over the defendant McBirney, he must have affirmatively established such minimum contacts with Oklahoma that its exercise of jurisdiction over him will be consonant with fair play and substantial justice. *See, e.g., World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291–95, 100 S.Ct. 559, 564–66, 62 L.Ed. 2d 490 (1980); *cf.* Okla.Stat.Ann. tit. 12, § 2004(F) (West Supp.1989) (providing that Oklahoma's long-arm statute extends to the limits of federal due process).

As he must, the plaintiff relies on the relatedness of the defendant McBirney's forum contacts to the instant action.[2] Specifically, the plaintiff identifies two bases for this Court's jurisdiction over McBirney: (1) McBirney's own conduct in relation to the forum; and (2) the plaintiff's forum-based conduct as an agent of McBirney. The two purported bases for jurisdiction are addressed in turn.

### A. *McBirney's Conduct*

Principally, the plaintiff asserts that the defendant McBirney's several telephone calls from Texas to Oklahoma to discuss the project and the Lamar loan with Bazarian, then-Chairman of the Board of CBFC, constitute sufficient forum contacts for the Court's assertion of jurisdic-

tion over McBirney. The Court disagrees. While not foreclosing the possibility, the Tenth Circuit recently noted that "[t]he existence of letters or telephone calls to the forum state related to the plaintiff's action will not necessarily meet due process standards." *Rambo,* 839 F.2d at 1418; *see Peterson v. Kennedy,* 771 F.2d 1244, 1261–62 (9th Cir.1985) (finding no reason to depart from the "general rule" that communication by telephone calls or letters into the forum does not establish a sufficient basis for an assertion of personal jurisdiction, where the defendant, a union attorney, made "a series of telephone calls" and sent an unspecified number of letters to the forum related to the plaintiff's cause of action); *see also ACME Equipment v. Metro Auto Auction,* 484 F.Supp. 219, 220–21 (W.D.Okla.1979). In determining the jurisdictional sufficiency of such contacts with the forum, the key factor is purposeful availment—that is, whether, by telephone calls and the like, a nonresident defendant has evidenced its intention to avail itself of the privilege of conducting business in the forum and the protections of local law. *Rambo,* 839 F.2d at 1419 & n. 5; *see Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958); *Architectural Bld. Components Corp. v. Comfort,* 528 P.2d 307, 310 (Okla.1974).

The Court finds insufficient evidence of purposeful availment in the defendant McBirney's conduct. The loan to CBFC giving rise to the joint venture relationship at issue was the product of the plaintiff's actions, as opposed to McBirney's, and was disbursed in Texas, not Oklahoma. *See Jem Engineering & Mfg. v. Toomer Elec. Co.,* 413 F.Supp. 481, 485–86 (N.D.Okla. 1976) (citing *McQuay, Inc. v. Samuel Schlosberg, Inc.,* 321 F.Supp. 902 (D.Minn. 1971); *Architectural Bld.,* 528 P.2d at 310. Moreover, in his Complaint, the plaintiff does not identify the situs of the project, the subject matter of the joint venture.

---

*Behagen v. Amateur Basketball Ass'n.,* 744 F.2d 731, 733 (10th Cir.1984), *cert. den.,* 471 U.S. 1010, 105 S.Ct. 1879, 85 L.Ed.2d 171 (1985); 5 C. Wright & A. Miller, *Federal Practice & Procedure* § 1363 (1969).

**2.** Quantitatively, the defendant's Oklahoma contacts are negligible. McBirney Affidavit ¶¶ 3–8; *see Helicopteros Nacionales,* 466 U.S. at 414 nn. 8–9, 104 S.Ct. at 1872 nn. 8–9 (noting the distinction between specific and general jurisdiction).

Yet, if the project is located outside the forum, the contacts established by the defendant's discussions with Bazarian are more attenuated and the case for purposeful availment as to the defendant is weaker because the focus of business activity is elsewhere. *See Colwell Realty Investments v. Triple T Inns,* 785 F.2d 1330, 1334 (5th Cir.1986); *Jem Engineering,* 413 F.Supp. at 485–86. Consequently, on the facts of this case, the Court finds the defendant's several telephone calls into the forum to be insufficient to support its assertion of jurisdiction over him.

### B. Imputed Conduct

 The plaintiff's second argument for an assertion of jurisdiction rests on the law of joint ventures. Largely, the conduct of joint ventures is governed by principles derived from partnership and agency law. *See* 46 Am.Jur.2d *Joint Ventures* §§ 1, 4 (1969). Accordingly, in joint ventures, "each member acts for himself as a principal and as an agent for the other member or members." *Rollins v. Rayhill,* 200 Okl. 192, 191 P.2d 934, 937 (1948). Based on CBFC's joint venture arrangement with the defendant McBirney, the plaintiff argues that, for purposes of personal jurisdiction, CBFC's contacts with the forum in furtherance of joint-venture objectives may be imputed to the defendant because CBFC was acting as McBirney's agent.

Although the plaintiff's joint-venture argument is not without merit as a general matter, the Court finds it unsupportable on the facts of this case. Invariably, in those few cases where courts have imputed forum contacts to a nonresident defendant on such an agency theory, the plaintiffs have been strangers to the joint venture arrangement. *See Aigner v. Bell Helicopters, Inc.,* 86 F.R.D. 532, 540–41 (N.D.Ill. 1980); *First National Bank of Minneapolis v. White,* 420 F.Supp. 1331, 1335–36 (D.Minn.1976); *cf. Rambo,* 839 F.2d at 1418 & n. 4 (assessing the viability of the plaintiff's agency-based argument for jurisdiction). In urging the Court to go further in extending the boundaries of the due process, by imputing CBFC's forum contacts to the defendant McBirney, the plaintiff cites no authority, binding or persuasive, on point, and the Court is unwilling to venture down this path unguided.

### III.

In sum, the Court finds that the defendant McBirney does not have sufficient contacts with the forum to support the Court's exercise of jurisdiction. Accordingly, the defendant's motion to dismiss is granted.

It is so ordered.