695 P.2d 477

**STATE of New Mexico, ex rel. Angelica GARCIA, Petitioner-Appellant,**

v.

**Harvey DAYTON, Jr., Respondent-Appellee.**

**No. 15093.**

Supreme Court of New Mexico.

Feb. 18, 1985.

Paul Bardacke, Atty. Gen., E. Carrell Ray, Asst. Atty. Gen., Albuquerque, for petitioner-appellant.

Atkinson & Kelsey, Sanford H. Siegel, Albuquerque, for respondent-appellee.

## OPINION

SOSA, Senior Justice.

This suit was brought in the district court of Bernallilo County to determine the paternity of an illegitimate minor child, and to require the respondent to provide child support. The court dismissed the action for lack of personal jurisdiction over the out-of-state respondent, Harry Dayton, Jr. (Dayton). Petitioner Angelica Garcia (Garcia) appeals. We affirm.

This is a case of first impression. The issue presented is whether, in a paternity and child support action, the State of New Mexico has personal jurisdiction over the nonresident alleged father under the "tortious act" subsection of the long arm statute. NMSA 1978, § 38–1–16(A)(3).

Garcia first tried to obtain jurisdiction over the alleged nonresident father through the use of the Revised Uniform Reciprocal Enforcement of Support Act (URESA) as adopted in NMSA 1978, Sections 40–6–1 through 40–6–41, (Repl.Pamp.

1983). Texas would not accept the URESA petition until paternity was established. Garcia, through the State of New Mexico, then attempted to obtain personal jurisdiction under the "tortious act" portion of the long arm statute, NMSA 1978, Section 38–1–16(A)(3), in her action to determine paternity and provide financial support for her minor child.

Dayton, a physician and former New Mexico resident, is presently a resident of Texas. He entered a special appearance challenging the use Section 38–1–16(A)(3). After a hearing on jurisdiction, the district court dismissed the action. Dayton argues that Garcia is not without a remedy, as she could elect to bring her paternity action under the Texas Family Code. Tex.Fam. Code Ann. §§ 13.01–13.06 (Vernon 1975).

Garcia, a student, replies that the problems of an out-of-state hearing include, *inter alia*, excessive costs that she is not able to afford, expert witnesses residing in New Mexico traveling to Texas, and the repetition of expensive blood tests on all parties. She asserts that these factors make it a case of *forum non conveniens* and asks this court to consider the relative financial positions of the parties and the other equities involved.

Garcia alleges that the parties, when both were New Mexico residents, engaged in a sexual relationship in New Mexico in 1979; and that a child was born of that relationship in 1980. She maintains that Dayton initially assisted with the support of the child, but did not continue the support after he moved to Texas. Garcia contends that Dayton's conduct in fathering a child in this state and thereafter abandoning him, constitutes tortious conduct within NMSA 1978, Section 38–1–16(A)(3).

The New Mexico Long Arm Statute provides in pertinent part:

Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts enumerated in this subsection thereby submits himself or his personal representative to the jurisdiction of the courts

of this state as to any cause of action arising from: * * *

(3) the commission of a tortious act within the state * * *.

NMSA 1978, §38–1–16(A)(3). To support her position, Garcia cites *Poindexter v. Willis,* 87 Ill.App.2d 213, 231 N.E.2d 1 (1967). *Poindexter* concluded that under the Illinois long arm statute:

the failure of the [nonresident] father to support an illegitimate child constitutes a tortious act within the meaning of the statute and subjects him to the jurisdiction of the Illinois courts.

*Id.* at 218, 231 N.E.2d at 3.

The *Poindexter* court defined "tortious act" under the long arm statute to include "any act committed in this State which involves a breach of duty to another and makes the one committing the act liable in damages." *Id.* at 217–218, 23 N.E.2d at 3.

Garcia points out that this court has previously taken the position that because the long arm statute in New Mexico was taken from the Illinois statute, the interpretations of the statute by Illinois courts are persuasive. *Telephonic Inc. v. Rosenblum,* 88 N.M. 532, 543 P.2d 825 (1975).

Garcia presents cases from other states that support her position thatnonsupport of an illegitimate child is a tort. *Nelson v. Nelson,* 298 Minn. 438, 216 N.W.2d 140 (1974); *Neill v. Ridner,* 153 Ind.App. 149, 286 N.E.2d 427 (1972). *See also* Annot., 76 A.L.R.3d 708 (1977) (use of long arm statutes in obtaining jurisdiction over nonresident parents in filiation and support proceedings).

Dayton argues that the majority of jurisdictions support his position, which is expressed in *A.R.B. v. G.L.P.,* 180 Colo. 439, 507 P.2d 468 (1973). There the court declared that even by the most liberal rules of construction it could not tolerate the inclusion of an act of sexual intercourse between consenting adults as a "tortious act" within the long arm statute. *Id.; see e.g., Howard v. County Court,* 272 Ark. 205, 613 S.W.2d 386 (1981); *State ex rel. Larimore v. Snyder,* 206 Neb. 64, 291 N.W.2d 241 (1980); *State ex rel. McKenna v. Bennett,* 28 Or.App. 155, 558 P.2d 1281 (1977); *Taylor v. Texas Dept. of Public Welfare,* 549 S.W.2d 422 (Tex.Civ.App. 1977); *State ex rel. Carrington v. Schutts,* 217 Kan. 175, 535 P.2d 982 (1975); *Barnhart v. Madvig,* 526 S.W.2d 106 (Tenn. 1975); *Anonymous v. Anonymous,* 49 Misc.2d 675, 268 N.Y.S.2d 710 (1966).

In agreement with the view of the respondent, a recent Illinois case declines to follow the earlier liberal definition of "tortious act" found in *Poindexter. People v. Flieger,* 125 Ill.App.3d 604, 80 Ill.Dec. 739, 465 N.E.2d 1376 (1984). In *Flieger,* the father had no contacts with the state of Illinois, except the making of one payment to the mother in Illinois. The *Flieger* court held that when the residence of the child in the state is the sole connection between the state and the alleged father, there are not sufficient minimum contacts for personal jurisdiction. *See also Kulko v. Superior Court,* 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978) (stating the *residence of the child* is not a sufficient minimum contact to obtain personal jurisdiction over the father in an action for child support); *Boyer v. Boyer,* 73 Ill.2d 331, 22 Ill.Dec. 747, 383 N.E.2d 223 (1978) (following *Kulko,* not *Poindexter* ).

■ The Colorado court in *A.R.B., supra,* addressed the question of "tortious" non-support of an illegitimate child and concluded that the threshold determination of paternity must first be made, and that the Colorado court would need jurisdiction over an alleged nonresident father in order to make that determination. *A.R.B. v. G.L.P.; see also Bartlett v. Superior Court,* 86 Cal.App.3d 72, 150 Cal.Rptr. 25 (1978) (citing *Kulko* ). We agree with those states that hold that paternity must first be established before the issue of failure of support can be addressed. We cannot hold that voluntary intercourse is a "tortious act" within the long arm statute. NMSA 1978, § 38–1–16(A)(3). However, if the respondent is first found to be the father of the child, and thereafter he is shown to have failed to provide proper sup-

port for his child, then it follows that he has violated his responsibility to his child. *See A.R.B. v. G.L.P.*

The New Mexico long arm statute, in its present form, will not allow a paternity action against a nonresident alleged father within the "domestic" subsection of the long arm statute, NMSA 1978, § 38–1–16(A)(5). That subsection, which requires "living in the marital relationship within the state," is inapplicable to this case because New Mexico does not recognize a common law marriage. *In re Gabaldon's Estate*, 38 N.M. 392, 34 P.2d 672 (1934).

A sister state has attempted to solve the problem of the nonresident putative father by enacting a statute to cover this particular situation. *See* Tex.Fam.Code § 11.051 (Vernon 1975); *see also Conlon ex rel. Conlon v. Heckler*, 719 F.2d 788 at 795 n. 7 (5th Cir.1983) (explaining the long arm effect of Tex.Fam.Code Ann. § 11.051 (Vernon 1975)).

We sympathize with the plight of Garcia in the matter of costs and inconvenience of a proceeding in a foreign state. However, petitioner is not cut off from all recourse because the long arm statute does not reach the alleged nonresident father. She may bring her cause of action in Texas. Tex.Fam.Code Ann. §§ 13.01–13.06 Vernon (1975).

This court has strongly expressed its concern for the support of the minor child by stating that it is the *"most important single obligation"* of the parent. *Niemyjski v. Niemyjski*, 98 N.M. 176, 177, 646 P.2d 1240, 1241 (1982). However, we cannot create personal jurisdiction where none exists. This is a matter of substance which can only be addressed through legislative change.

The trial court is affirmed.

IT IS SO ORDERED.

FEDERICI, C.J., and WALTERS, J., concur.