**Donna BEH, Plaintiff,**

v.

**Donald R. OSTERGARD, M.D., and the Regents of the University of California, Defendants.**

**No. CIV 86–0012 JC.**

United States District Court,
D. New Mexico.

March 17, 1987.

Toulouse, Toulouse & Garcia P.A., Narcisco Garcia, Jr., Albuquerque, N.M., for plaintiff.

Jerrald J. Roehl, Roehl and Henkel, Albuquerque, N.M., Garcia, Emmons & Maranga, North Hollywood, Cal., Greines, Martin, Stein & Richland, Beverly Hills, Cal., for defendants.

## AMENDED MEMORANDUM OPINION

CONWAY, District Judge.

THIS MATTER comes on for consideration of Defendant's Motion to Dismiss for lack of *in personam* jurisdiction and 11th amendment immunity, filed on July 15, 1986. The Court, having considered the pleadings, the memoranda submitted by the parties, and the applicable law, finds that the Motion to Dismiss for lack of *in personam* jurisdiction is well taken and will be granted. The Court accordingly does not reach the immunity issue.

The Plaintiff, Donna Beh, received an implant of a Dalkon Shield intrauterine contraceptive device (I.U.D.) from the Defendants in 1976. The Defendant doctor performed the operation in Torrance, California. Beh developed numerous complications upon her return to New Mexico. She brought suit alleging negligence, battery, breach of warranty and breach of fiduciary duty against Dr. Ostergard, and a claim of negligent supervision and *respondeat superior* against his employer, the Board of Regents of the University of California.

The Defendants moved to dismiss under Fed.R.Civ.P. 12(b)(2) for lack of *in personam* jurisdiction. The Plaintiff in response contends that jurisdiction over the Defendants is proper, and in the alternative, that if this Court does not have jurisdiction, I should transfer this case to the appropriate federal district court in California under 28 U.S.C. § 1404(a). This Court must analyze whether exercising *in personam* jurisdiction over the Defendants is proper, and if it is not, determine whether to transfer or dismiss the Plaintiff's claim.

### A. PERSONAL JURISDICTION

■ Federal Courts, sitting in diversity, have personal jurisdiction to the extent permitted by the law of the state in which they sit. *Yarbrough v. Elmer Bunker and Associates*, 669 F.2d 614, 616 (10th Cir.1982). I must accordingly apply the personal jurisdiction law of the State of New Mexico.

*In personam* jurisdiction in New Mexico over non-resident Defendants has three elements. The Court must first determine whether the defendant has committed one of the acts enumerated in the long-arm statute as a basis for exercising extra-territorial jurisdiction. If the Court so finds, it must then determine whether the cause of action arises from the acts enumerated in the statute. The Court must then analyze whether the defendant has had "minimum contacts" with the State of New Mexico sufficient to satisfy the requirements of the Due Process Clause of the United States Constitution.

**I. Commission of an enumerated act under the Long-Arm Statute.**

In order to exercise *in personam* jurisdiction over a nonresident defendant, service of process must comport with Fed.R.Civ.P. 4(e), which states in part:

Whenever a statute or rule of court of the state in which the district court is held provides (1) for the service of a summons ... upon a party not an inhabitant of or found within the state ... service may be made under the circumstances and in the manner prescribed in the statute or rule.

This Court accordingly looks to the New Mexico Long-Arm Statute, N.M.Stat.Ann. § 38–1–16 (1978), which authorizes extraterritorial jurisdiction. The statute provides:

A. Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts enumerated in this subsection thereby submits himself or his personal representative to the jurisdiction of the courts of this state as to any cause of action arising from:

(1) **the transaction of any business within this state;** ....

(3) **the commission of a tortious act within this state;** ...

B. Service of process may be made upon any person subject to the jurisdiction of the courts of this state under this section by personally serving the summons upon the defendant outside this state and such service has the same force and effect as though service had been personally made within this state.

C. **Only causes of action arising from acts enumerated in this section may be asserted against a defendant in an action in which jurisdiction is based upon this section.**

D. Nothing contained in this section limits or affects the right to serve any process in any other manner now or hereafter provided by law.

(Emphasis added). The Plaintiff contends that this Court has *in personam* jurisdiction over the Defendants since they have committed tortious acts and transacted business in New Mexico.[1]

■ This Court must analyze Plaintiff's contentions in light of the common law interpretation of the New Mexico Long-Arm Statute.[2]

Plaintiff contends that, although the negligent implantation of the I.U.D. occurred in California, she developed complications in New Mexico. She argues that because a tort is not complete until the injury occurs, the place of injury determines where the tort occurs, and thus, the tortious act was committed in New Mexico.

■ This case is functionally indistinguishable from *Tarango v. Pastrana*, 94 N.M. 727, 616 P.2d 440 (Ct.App.1980). In *Tarango*, the Plaintiff underwent tubal ligation in Texas, but nevertheless became pregnant upon her return to New Mexico. The Court held that a tortious act had been committed in New Mexico:

---

**1.** The Plaintiff actually argued that the Defendants were subject to long-arm jurisdiction because they committed a tortious act in New Mexico, transacted business in New Mexico, conducted research in New Mexico and hold property in New Mexico. Response at 3–4. Because conducting research and holding property are not enumerated acts under the long-arm statute the Court does not consider the final two allegations in its analysis. N.M.Stat.Ann. 38–1–16(C); See *Worland v. Worland*, 89 N.M. 291, 295, 551 P.2d 981, 985 (1976); *State ex rel. Garcia v. Dayton*, 102 N.M. 327, 330, 695 P.2d 477, 480 (1985).

**2.** The Board of Regents could arguably be considered "present" in New Mexico by virtue of their frequent transaction of business and ownership of property within the state. *See generally* N.M.Stat.Ann. § 38–1–6 (1978). Under such circumstances, the Plaintiff would not need to resort to the long-arm statute as a basis for jurisdiction. The Plaintiff has, however, relied on extraterritorial jurisdiction in the present case, and I must accordingly ignore those allegations of acts not specifically enumerated in the statute. Moreover, ownership of property within the state is not by itself a "minimum contact" sufficient to allow the exercise of *in personam* jurisdiction over a non-resident defendant if the property is not related to the plaintiff's cause of action. *Shaffer v. Heitner*, 433 U.S. 186, 208–209, 97 S.Ct. 2569, 2581–2582, 53 L.Ed.2d 683 (1976).

Plaintiffs also contend that defendants committed a tortious act in New Mexico. Their theory is that even though any wrongful act on the part of defendants may have occurred in Texas, a tort is not complete until there is injury. *See Peralta v. Martinez,* 90 N.M. 391, 564 P.2d 194 (Ct.App.1977). Plaintiffs assert there was no injury until Angelina became pregnant. Inasmuch as Angelina became pregnant in New Mexico, plaintiffs assert the tortious act occurred in New Mexico. This view, of the place of commission of a tortious act, has been adopted in Illinois in connection with that state's long-arm statute. *Gray v. American Radiator & Standard Sanitary Corp.,* 22 Ill.2d 432, 176 N.E.2d 761 (1961); *see Honeywell, Inc. v. Metz Apparatewerke,* 509 F.2d 1137 (7th Cir. 1975). New Mexico's long-arm statute was adopted from Illinois and the interpretation of the Illinois statute by Illinois courts, although not binding, is persuasive. *Hunter-Hayes Elevator Co. v. Petroleum Club Inn Co.,* 77 N.M. 92, 419 P.2d 465 (1966)

*Id.* at 728, 616 P.2d at 441. The Plaintiff satisfies the first prong of the test, as she has properly alleged that the Defendants have committed a tortious act within New Mexico. Further, the Defendants do not contest Plaintiff's contention that they transact business in New Mexico.

## II. The cause of action arises from the acts enumerated in the long-arm statute.

By its own terms, the New Mexico Long Arm Statute provides that the cause of action must arise from the acts enumerated therein:

> [The] purpose [of requirements established by long-arm statute, that defendant must have done one of the acts enumerated in the statute and that plaintiff's cause of action must arise from defendant's doing the act] is to insure that there is a close relationship between a non-resident defendant's jurisdictional activities and the cause of action against which he must defend.

*Winward v. Holly Creek Mills, Inc.,* 83 N.M. 469, 471–472, 493 P.2d 954, 956, 957 (1972).[3]

In the present case, the negligence and battery causes of action against Dr. Ostergard, and the *respondeat superior* and negligent supervision claims against the Board of Regents arise from the alleged commission of a "tortious act" in New Mexico. The Plaintiff satisfies the second prong of the test as to the Defendants.[4]

---

3. *Holly Creek Mills* was cited for the opposite proposition in *Moore v. Graves,* 99 N.M. 129, 654 P.2d 582 (Ct.App.1982). The Court of Appeals stated:

> A non-resident defendant by some act must have availed himself of the privilege of conducting activities in New Mexico to invoke the benefits and protection of its laws. **This activity is not required to be directly related to plaintiffs' cause of action** as long as there are sufficient contacts.

*Id.* at 131, 654 P.2d at 584 (emphasis added). While the Court of Appeals in *Moore v. Graves* mischaracterized *Holly Creek Mills,* the Supreme Court effectively reinstated the *Holly Creek Mills* rule in *Customwood Mfg. v. Downey Construction Co., Inc.,* 102 N.M. 56, 691 P.2d 57 (1984):

> ... [A] single transaction of business within this State can be sufficient to subject a nonresident defendant to the jurisdiction of New Mexico Courts, **provided that the cause of action being sued upon arises from that particular transaction of business.**

*Id.* at 57, 691 P.2d at 58 (emphasis added). Not to be outdone, the Supreme Court cited *Moore v. Graves* for this proposition, despite that opinion's declaration of the opposite rule. Federal courts in diversity cases must adhere to an authoritative declaration of state law by the state's highest court. *Mitchell v. King,* 537 F.2d 385, 389 (10th Cir.1976). This court determines that the rule of *Holly Creek Mills,* as reaffirmed in *Customwood v. Downey,* is the law of New Mexico.

4. The defendants contend that the plaintiff's cause of action must arise from the acts alleged to establish "minimum contacts" with the forum. Motion to Dismiss at 14. The long-arm statute does not have this requirement; rather, it requires only that the cause of action arise from one of the acts enumerated in the statute. N.M.Stat.Ann. § 38–1–16(A) (1978). The New Mexico courts are unclear on this issue; Compare *Kathrein v. Parkview Meadows, Inc.,* 102 N.M. 75, 76, 691 P.2d 462, 463 (1984), with *Moore v. Graves,* 99 N.M. 129, 131, 654 P.2d 582, 584 (Ct.App.1982); and *Winward v. Holly Creek Mills,* 83 N.M. 469, 471–472, 493 P.2d 954, 956–957 (1972). Although I am impressed with the logic of the defendants' argument and the reasoning of *Holly Creek Mills,* the clear, unambiguous language of the statute controls this court.

■ However, the Plaintiff never alleges that her causes of action arose in any way from the Board of Regents' transaction of business in New Mexico. Absent this allegation, the Plaintiff cannot sustain her burden of establishing this Court's long-arm jurisdiction over the Defendant Board of Regents on that basis. The analysis therefore continues only as to the claim of "commission of a tortious act" in New Mexico.

### III. Constitutionally adequate minimum contacts with the state.

The New Mexico Court of Appeals stated in *Tarango:* "Although the alleged tort may have been completed in New Mexico that, in itself, is insufficient. The minimum contact requirement must be met." 94 N.M. at 728, 616 P.2d at 441. The Due Process Clause of the United States Constitution allows extra-territorial jurisdiction whenever the Defendants have had sufficient "minimum contacts" with the forum so that hailing the Defendants into the forum will not offend "traditional notions of fair play and substantial justice," the due process cornerstone. *International Shoe v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).[5]

The type of activity which satisfies the Due Process Clause has been defined as "... some act by which the defendant purposely avails himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958).

It is well settled law in New Mexico that performing an operation in California does not constitute "purposefully availing [one-self] of the privilege of conducting activities" within New Mexico:

> When one seeks out services which are personal in nature, such as those rendered by attorneys, physicians, dentists, hospitals or accountants, and travels to the locality where he knows the services will actually be rendered, he must realize that the services are not directed to impact on any particular place, but are directed to the needy person himself. While it is true that the nature of such services is that if they are negligently done, their consequences will thereafter be felt wherever the client or patient may go, it would be fundamentally unfair to permit a suit in whatever distant jurisdiction the patient may carry the consequences of his treatment, or the client the consequences of the advice received.

*Tarango* 94 N.M. at 729, 616 P.2d at 442, quoting *Gelineau v. New York University Hospital,* 375 F.Supp. 661 (D.N.J.1974). Moreover, *Gelineau* and *Tarango* are consistent with recent United States Supreme Court pronouncements on "minimum contacts". *See generally, World Wide Volkswagen v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Kulko v. California Superior Court,* 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978). The Plaintiff must therefore allege some act by the doctor, other than performing the operation, which would constitute "minimum contacts" with the State of New Mexico for purposes of the Due Process Clause.

The Plaintiff alleged that:

> Dr. Ostergard published articles that circulated in New Mexico which were directly related to the improper research

---

**5.** The specific acts enumerated in the New Mexico long-arm statute and the constitutional due process requirement of "minimum contacts" are often congruent. See *United Nuclear Corp. v. General Atomic Co.,* 90 N.M. 97, 102, 560 P.2d 161, 166 (1976). However, factual situations exist where one of the requirements are met but not the other. *Compare Barker v. Barker,* 94 N.M. 162, 165, 608 P.2d 138, 141 (1980) (act of paternity by defendant sufficient "minimum contact" under Due Process Clause) with *State ex rel. Garcia v. Dayton,* 102 N.M. 327, 329, 695 P.2d 477, 479 (1985) (But, as paternity is not an enumerated act in the long-arm statute, extra-territorial jurisdiction is forbidden); *see also Tarango v. Pastrana,* 94 N.M. 727, 728, 616 P.2d 440, 441 (Ct.App.1980) (Doctor's malpractice in Texas which caused injury in New Mexico is commission of a tortious act within New Mexico and thus satisfied long-arm statute, but does not provide "minimum contacts" sufficient to satisfy constitutional Due Process Requirement).

and experimentation he conducted by implanting I.U.D.'s in Ms. Beh and others. Dr. Ostergard could have expected to benefit professionally by having his articles read by colleagues in New Mexico and he also benefited monetarily from A.H. Robins Co. for doing research using their product, and gaining it national attention ...

Response at 3. The Plaintiff thus argues that publishing the results of negligent research constitutes sufficient "minimum contacts" to allow the exercise of extra-territorial jurisdiction over these Defendants without offending the Due Process Clause.

■ The Plaintiff's allegations are clearly insufficient. As noted in *Jones v. 3M Company*, 107 F.R.D. 202, 207 (D.N.M. 1984): "An assertion of personal jurisdiction requires that Defendants do some act to purposefully avail themselves of the laws of this forum. The publication of information that fortuitously finds its way into this forum is not such an act." Unless the Plaintiff alleges that the Defendant had a regular distribution plan for his publications into New Mexico for which he derived commercial benefit, see *Blount v. T.D. Publishing Corp.*, 77 N.M. 384, 391, 423 P.2d 421, 428 (1966), or that the Defendant intentionally harmed or defamed the Plaintiff in New Mexico by publishing the article, *see Calder v. Jones*, 465 U.S. 783, 789, 104 S.Ct. 1482, 1486, 79 L.Ed.2d 804 (1984), this Court cannot assert *in personam* jurisdiction consistent with the Due Process Clause. Plaintiff's allegations meet the criteria of neither *Blount* nor *Calder*. The complaint does not allege sufficient "minimum contacts" to allow the exercise of extraterritorial jurisdiction over these Defendants consistent with the Due Process Clause.

## B. TRANSFER OR DISMISSAL

Having determined under *Tarango, 3M Company* and *Holly Creek Mills* that this Court cannot exercise *in personam* jurisdiction over these Defendants, the Court must now decide whether to dismiss this case or to transfer the case to the proper federal district court in California, where Plaintiff may then obtain jurisdiction. Transfer of cases is authorized by 28 U.S.C. § 1404 which states in part:

(a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought ...

I am presented with the oft-litigated issue of whether the transferor court, in order to effect a valid transfer under § 1404(a), must first have personal jurisdiction over the Defendants. At the outset, nothing in the language of the statute renders the authority to transfer conditional upon valid *in personam* jurisdiction. I must accordingly review the common law interpretation of the statute to find any limitation on its applicability.

Neither the United States Supreme Court nor the 10th Circuit has considered this issue. The Court relies on guidance from other circuits or districts which have considered this question and analogous issues. The clear majority of courts which have considered this question hold that lack of *in personam* jurisdiction does not, in and of itself, preclude transfer under § 1404(a). *See, e.g., Reyno v. Piper Aircraft Co.*, 630 F.2d 149, 164–165 (3d Cir.1980) *rev'd on other grounds*, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1982); *Torres v. Torres*, 603 F.Supp. 440, 442 (D.N.Y.1985); *Welsh v. Cunard Lines, Ltd.*, 595 F.Supp. 844, 845 (D.Ariz.1984); *Stevens Yachts of Annapolis, Inc. v. American Yacht Charters, Inc.*, 571 F.Supp. 467, 468 (D.Pa.1983); *Koehring Co. v. Hyde Construction Co.*, 324 F.2d 295, 297–298 (5th Cir.1964); *United States v. Berkowitz*, 328 F.2d 358, 361 (3rd Cir.1964), *cert. denied*, 379 U.S. 821, 85 S.Ct. 42, 13 L.Ed.2d 32 (1961); contra *Rhea v. Muskogee General Hospital*, 454 F.Supp. 40, 43 (E.D.Okla.1978).

The Supreme Court has considered a statute closely analogous to § 1404[6] and

6. Section 1406(a) concerns the transfer of a case from a forum of improper to a forum of proper venue. Section 1404 concerns the transfer of a case from a forum of a proper venue to another forum of proper venue. In the present case, it

has found that lack of *in personam* jurisdiction does not foreclose transfer. In *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962), the Court upheld transfer of a case under 28 U.S.C. § 1406(a), despite the admitted absence of jurisdiction over the Defendants. Section 1406(a) provides:

> The district court of a district in which is filed a case laying venue in the wrong division shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

■ Because the language in § 1404 is even broader than the language in § 1406, I conclude that the same reasons which would justify a transfer under § 1406 would also justify transfer under § 1404. *Berkowitz*, 328 F.2d at 361. I thus consider the construction of § 1406 by the Supreme Court.

In *Goldlawr*, the Plaintiff filed suit in Federal District Court in Pennsylvania, incorrectly contending that the Defendants were "transacting business" in Pennsylvania and thus subject to jurisdiction under the Pennsylvania Long-Arm Statute. The Supreme Court held that the avowed purpose of the transfer statute—"... avoiding the injustice which had often resulted to Plaintiffs from dismissal of their actions merely because they had made an erroneous guess with regard to the existence of some elusive fact of the kind upon which venue provisions often turn"—was equally applicable to errors regarding personal jurisdiction:

> Indeed, this case is itself a typical example of the problem sought to be avoided for dismissal here would have resulted in Plaintiff's losing a substantial part of its cause of action under the statute of limitations merely because it made a mistake in thinking that the respondent corporations ... "transact ... business" in the Eastern District of Pennsylvania. The language and history of § 1406 ... show a congressional purpose to provide as effective a remedy as possible to avoid precisely this sort of injustice.

is uncontroverted that venue is proper in this

369 U.S. at 466, 82 S.Ct. at 915. The Court thus held that a mistake as to the "elusive fact" of "minimum contacts" necessary to support *in personam* jurisdiction mandates transfer to a forum where jurisdiction could be obtained, rather than outright dismissal.

■ This Court is also persuaded by the excellent opinion in *Rhea v. Muskogee General Hospital*, 454 F.Supp. 40 (E.D.Okla. 1978) which interpreted both § 1404(a) and the *Goldlawr* opinion. In *Rhea*, the Plaintiffs filed suit in federal district court in California without obtaining *in personam* jurisdiction over the Oklahoma defendants. Upon defendant's Motion to Dismiss, the plaintiffs admitted that the Court could not get personal jurisdiction over the defendants and requested a transfer under § 1404, relying on *Goldlawr*. The case was transferred to the District of Oklahoma, which dismissed the action on the basis that the federal district court in California lacked jurisdiction over the Defendants. The Court in *Rhea* limited the applicability of *Goldlawr*:

> The Supreme Court in *Goldlawr* dealt with a plaintiff's "erroneous guess with regard to the existence of some elusive fact" ... In contrast to the plaintiff in *Goldlawr*, the plaintiff in this case either knew or should have known, in the exercise of reasonable diligence, that service of process could not be effected over the defendants in the district [where the suit was filed] ...

454 F.Supp. at 43. The *Rhea* opinion persuades this Court that the Plaintiff in this case must reasonably and in good faith believe that this Court has *in personam* jurisdiction over the Defendants in order to avoid dismissal.

The present case falls between the limits of *Rhea* and *Goldlawr*. Unlike *Rhea*, the Plaintiffs demonstrate in their response a good faith belief that this Court has *in personam* jurisdiction over the Defendants. However, unlike *Goldlawr*, this mistake was not a reasonable mistake as to some "elusive fact." While the Supreme

forum, thus § 1404 applies.

Court had good reason to write in 1962 that long-arm jurisdiction based upon "minimum contacts" under "transaction of business" was elusive, the concept has been significantly clarified over the last quarter century. *See generally, Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977); *Worldwide Volkswagen v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Rush v. Savchuk,* 444 U.S. 320, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980); *Burger King v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Moreover, the Defendant's case is clearly indistinguishable from *Tarango v. Pastrana,* a leading case in this jurisdiction since 1980. That the law is well-settled against the Plaintiff forecloses the argument that the fact of *in personam* jurisdiction was "elusive". This case is thus distinguishable from *Goldlawr,* and within the ambit of *Rhea.* I am persuaded by the opinion in *Rhea* that it is in the interest of justice to dismiss, rather than transfer, the Plaintiff's claim. An Order will be entered accordingly.